Carol D. TURNER, Respondent,

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri and Conagra, Inc., Appellants,**

and

**Missouri Division of Employment Security, Defendant.**

**No. WD 42782.**

Missouri Court of Appeals, Western District.

July 17, 1990.

James B. Crenshaw, Jefferson City, James G. Nowogrocki, St. Louis, for appellants.

Charles A. Powell, Jr., Macon, for respondent.

Before TURNAGE, P.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

This action involves the review of a decision of the Labor and Industrial Relations Commission ("Commission") pursuant to the Missouri Employment Security Law, Mo.Rev.Stat. Chapter 288 (1986). The issue before this Court is whether claimant's employer properly terminated her employment based on "voluntary quit" provisions of the company's sick leave policy. We affirm.

Claimant was allegedly under extreme emotional and nervous distress because of problems on the job and at home. She served as a secretary to Robert Maddox, human resources manager for Banquet Foods, Division of Conagra, Inc. located in Macon, Missouri. The claimant believed Maddox to be unduly critical of her. Claimant also admitted to marital problems, including an alcoholic husband who had been charged with three counts of vehicular manslaughter after an automobile accident.

Claimant last worked for the employer on Friday, August 15, 1986. Claimant admitted herself as a patient into Laughlin Hospital in Kirksville on August 16, 1986, at the insistence of Linda Barrett, her therapist, and Dr. Pattison, a psychiatrist. Both Barrett and Dr. Pattison recommended that claimant Turner be away from all her problems for a period of time, extending for a week to a month. Claimant testified that she resisted their recommendation of one month's hospitalization because of her concerns about work, and because she had no place to send her children who, at that time, were ages nine, four, and eighteen months. She finally agreed to the hospital admission. At claimant's request, Barrett telephoned Maddox on Sunday evening, August 17, to explain the claimant's hospitalization.

On Monday afternoon, August 18, 1986, the claimant checked herself out of the hospital against medical advice. She indicated to her therapist and doctor that she was going to take a little time off from work, but not a month.

Claimant's job as the secretary to the human resources manager included dealing with the company's sick leave policy on a regular basis. Claimant testified that the company policy required that a person too ill to come to work must notify the company of this illness or call within three days; otherwise, the employee is considered self-terminated.

Claimant telephoned Barrett on Thursday evening, August 21, and reported she felt "really good" and this would be her only week off from work as she planned on going back on Monday morning. She told Barrett she would have to get some papers to send to Maddox to prove she was off work and under Barrett's care.

When claimant reported to work on Monday, August 25, she found her desk cleaned out. She saw the company nurse go by and stated, "it looks like I don't have a job anymore," and the company nurse responded, "No, I don't think so." Claimant said that that was fine, picked up her box of personal possessions and left the premises. That same day she reported to her local Employment Security office and filed for unemployment benefits.

Claimant testified she received a check for two weeks vacation pay from the employer. She further admitted she was aware that three days of no show and no word was a voluntary quit, and knew that Banquet had applied that policy for some time.

Claimant admitted she neither called her supervisor, Maddox, nor anyone else at her employer's office after checking out of the hospital on Monday, August 18. She further testified she was not under anyone's direct, technical medical care after checking out of the hospital on August 18. Claimant also admitted that when she did report to work on August 25, she knew that the company nurse with whom she spoke had no authority to hire or fire her, but she did not telephone or attempt to speak to her supervisor, Maddox, either that day or at any time whatsoever after August 15, which was the last day she worked.

Claimant testified that during the week beginning Monday, August 18, she was at her home, at the lake, out with girlfriends once, and that she visited with her grandparents. She further admitted that the majority of the time she was off work, she spent with her children at the lake relaxing, which she described as a "vacation type thing."

Claimant's exhibits A and B were admitted into evidence. Exhibit A is a letter from Keith L. Pattison, D.O. indicating claimant needed hospitalization from August 16, 1986, through August 18, 1986, and further stating he made repeated efforts to get her not to shorten her hospitalization stay by several days. Exhibit B is a letter from Linda Barrett indicating she discussed with the claimant the importance of her hospitalization for a stay of at least several weeks. The letter also confirmed that she called Maddox on August 17 and advised him of the hospitalization for several days or longer.

Maddox testified that claimant Turner's termination was termed a voluntary quit because she was absent three days without reporting or notifying the company. Maddox further testified that the three days no show, voluntary quit policy had been in effect for over thirteen years.

Maddox stated that Barrett telephoned him at his home on Sunday evening, August 17, and told him that the claimant was hospitalized, and that Turner required a week of hospitalization. Barrett inquired if that was a problem, and he responded, "it was not." Barrett also told Maddox that she was trying to keep claimant until Friday, but that she could walk out of the hospital on Monday and be back to work Tuesday.

On Monday, August 18, no one had contacted Maddox regarding the claimant or her status. On Tuesday, August 19, Turner's mother called Maddox and asked if he knew where Carol was. He advised claimant's mother that Turner was in the hospital at Kirksville. Maddox and some coworkers mailed a get well card to claimant at the hospital on Tuesday, August 19. Maddox still had heard from no one regarding Turner. Therefore, on August 21, he asked the company's health supervisor, Mary Johnson, to telephone the hospital to see how the claimant was doing. Johnson reported to Maddox that she was told by Laughlin Hospital that Turner had walked out of the hospital on Monday, August 18. Also on August 21, one of the claimant's sons telephoned Maddox's office twice to speak with Turner, and advised the individual answering the phone that the claimant was not in the hospital any longer and had her children to the lake the day before. Maddox heard nothing more from Turner or anyone on her behalf, and on Saturday morning, August 23, he determined to terminate claimant as a voluntary quit in accordance with company policy.

Maddox testified that claimant's job would not have been in jeopardy if she had stayed in the hospital under doctor's care all week. He further testified that although she had previously used all her sick leave, the company would have allowed Turner to take some type of disability leave with the presentation of a note from a doctor providing direct care for her.

The record reflects that both the employer and the claimant were represented by

counsel at the hearing before the appeals tribunal. Further, neither Dr. Pattison nor Barrett appeared and testified. However, they both sent letters to the employer which constituted exhibits A and B. Based on the foregoing facts, the appeals tribunal reached the conclusions of law set out below in relevant part:

It is found the claimant was excused from work on August 17, 1986, for one week of hospitalization. When the claimant left the hospital in less than one week, she had an obligation to notify the employer of her whereabouts and need, if any, to be absent from work in order to demonstrate her intent to remain employed. The claimant's silence between August 18, 1986, and August 25, 1986, did not meet that obligation and, in light of her thorough understanding of the employer's policy related to job abandonment, demonstrated an intent to become unemployed.... It is found the claimant voluntarily left her work on August 25, 1986, [sic] without good cause attributable to her work or to her employer.

A timely application for review was filed with the Commission and on June 24, 1987, the Commission issued its decision affirming the decision of the appeals tribunal, with one member dissenting.

On July 7, 1987, a petition for judicial review was filed in the Circuit Court of Macon County, Missouri. On November 8, 1989, the circuit court issued its order in the cause, remanding the matter to the Commission after finding that the decision of the Commission was not supported by competent and substantial evidence.

Judicial review of decisions of the Commission in employment security matters is governed by Mo.Rev.Stat. § 288.210 (1986). This section provides in relevant part:

In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law. Such actions and the questions so certified shall be heard in a summary manner and after

the hearing the court shall enter an order either affirming the decision of the commission or remanding the cause to the commission for further proceedings not inconsistent with the declarations of law made by the court.

■ In applying this standard, this Court has held that it is the function of the reviewing court to decide whether, upon the whole record, the Commission could have reasonably made its findings and reached its result. *Union–May–Stern Co. v. Indus. Comm'n*, 273 S.W.2d 766, 768 (Mo. App.1954). It has also been held that in determining the sufficiency of the evidence, such evidence must be considered in the light most favorable to the findings, together with all reasonable inferences which may be drawn therefrom that seem to support it. Therefore, the reviewing court may use only the evidence and inferences which support the Commission, and must disregard all evidence and references to the contrary. *LaPlante v. Indus. Comm'n*, 367 S.W.2d 24, 27 (Mo.App.1963). When the triers of fact have reached one of two possible conclusions from the evidence, the reviewing Court may not substitute its contrary conclusion even if it can be said such conclusion might have been reasonably reached. *Union–May–Stern Company*, 273 S.W.2d at 768.

When the issue is one of credibility, the weight of the evidence, and the credibility of the witnesses are matters for the Commission to decide. When the evidence of each party, and inferences to be drawn therefrom, conflict, resolution of the conflicting inferences is the job of the Commission, and its resolution is binding on the reviewing court. *IXL Mfg. Co. v. Labor and Indus. Relations Comm'n*, 679 S.W.2d 903, 905 (Mo.App.1984).

■ In the case at bar, the cause of claimant's unemployment was her failure to contact her employer after checking out of the hospital, against medical advice, for three consecutive days. She did this with the full knowledge and understanding that failure to report for work or contact the employer for three consecutive days was

uniformly treated as a self-termination by her employer.

The Commission has the right to judge the credibility of the witnesses and to reject testimony in whole or in part. While the Commission may not disregard undisputed or uncontradicted testimony without a specific finding of the testimony not being worthy of belief, in this case the claimant's own version of the events was somewhat self-contradictory. *See Stevinson v. Labor and Indus. Relations Comm'n*, 654 S.W.2d 373, 374–75 (Mo.App.1983). Claimant's admissions against interest contained in her own testimony and that contained in her exhibits establish that claimant never contacted Banquet Foods after her last day of work to seek time off from work for herself. Rather, she had her therapist, Barrett, contact the employer on August 17, to obtain permission for her to be off at least a week *for hospitalization*. That permission was granted, but claimant against medical advice, checked out on Monday, August 18. There is no evidence that she was under the care of Dr. Pattison or Barrett once she left the hospital. Medical supervision is not reflected in either exhibits A or B. Instead, both Dr. Pattison and Barrett repeat claimant's concern about losing her job. Yet, that concern did not rise to the level of a telephone call by her to her employer.

■ Claimant objects to some of the evidence submitted by the employer as hearsay. It has long been recognized in Missouri that parties to an administrative hearing may, for reasons of trial strategy or other cause, waive objections to hearsay, and that such evidence may then be considered as competent and substantial for the purposes of the agencies' findings. *Mark Twain Homes, Inc. v. Labor & Indus. Relations Comm'n*, 616 S.W.2d 145, 147 (Mo.App.1981). Claimant's counsel made no hearsay objection to any of the employer's testimony before the appeals tribunal, and has therefore waived any such objection, thereby consenting to the hearsay evidence being considered competent and substantial. However, we note that the decision of the commission is supported by the evidence and exhibits of claimant alone, without any reliance on the evidence of the employer.

It is clear that the direct and immediate cause of claimant's unemployment was her inaction in not notifying her employer of any need to be absent, or intent to be absent for more than three consecutive days after checking out of the hospital against medical advice on Monday, August 18, 1986. This is a direct violation of a well known and enforced company policy providing that an individual's failure to show, or to provide notice for three consecutive days, constituted a self-termination or a voluntary quit. While the members of this Court might disagree with the decision of the employer to terminate under these facts, the record does support the Commission's concurrence with that decision. Therefore, the decision of the Commission was supported by competent and substantial evidence on the whole record.

The judgment of the circuit court is reversed and this cause is remanded to the court with directions to enter judgment affirming the decision of the Commission.

All concur.