Hope MADEWELL, Appellant,

v.

DIVISION OF EMPLOYMENT SECURITY, Respondent.

No. WD 60106.

Missouri Court of Appeals, Western District.

Submitted Dec. 5, 2001.

Decided March 26, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 2002.

Samuel I. McHenry, Kansas City, for Appellant.

Sharon Ann Willis, Kansas City, for Respondent.

Before JAMES M. SMART, JR., HAROLD L. LOWENSTEIN, and JOSEPH M. ELLIS, JJ.

PER CURIAM.

Hope Madewell appeals from a final order of the Labor and Industrial Relations Commission of Missouri on her claim for unemployment benefits. The Commission affirmed the appeals tribunal's decision that Madewell voluntarily left her employment. After a hearing on Madewell's appeal from an adverse decision by a deputy with the Missouri Division of Employment Security on March 16, 2001, the appeals referee entered findings of fact and conclusions of law that Madewell quit her employment voluntarily without cause related to her work or employer within the statutory language contained in § 288.050.1, RSMo 2000. She now appeals to this court.

## STATEMENT OF FACTS

Madewell began working as a customer service representative for AT & T in August, 1996. In April of 2000, as a result of manic depression, Madewell applied for and was granted a medical leave of absence under the Family and Medical Leave Act of 1993. Her last day of active work was on April 21, 2000. The leave was initially granted for the period from April 18, 2000, through May 19, 2000. It was thereafter extended for an indefinite period. Madewell's disability leave benefits were provided by MetLife.

On the evening of October 2, 2000, Madewell, while picking up one of her children at an after-school function, met the employer's attendance manager, who happened to be there at the same time. He told her that she needed to report to work the next day, October 3, 2000. That same evening, Madewell contacted the agency, MetLife, to which she was directed by the employer when the leave was granted and was told by MetLife representatives, she said, that she could not return to work until she received a release from her physician.

On October 3, 2000, according to Madewell, she attempted to contact the employer's attendance manager by telephone about her status, and left a message for him to call her, but her message was not returned. Also, on October 3, 2000, Madewell made an appointment with her physician for October 4, 2000, in order to be released to return to work without restrictions as of that date. However, on October 4, 2000, Madewell received a letter from the employer dated October 3, 2000, stating that she was terminated because she did not report to work on October 3, 2000, as directed by the employer's manager. Madewell made no further effort to contact the employer. That letter, signed by Steve Hitchye, AT & T Attendance Manager, stated:

As stated in my letter sent to you on September 26, your absence from work since September 11, 2000 is considered unauthorized. An unauthorized absence

is a form of misconduct that can result in discipline up to and including dismissal.

Therefore, since you did not report to work by October 3, 2000 as directed by me, I have terminated your employment with AT & T effective immediately for misconduct.

Madewell received a "Family and Medical Leave of Absence (FMLA) Notification," which stated that Madewell met the eligibility requirements of FMLA, with total FMLA remaining during the applicable 12 month period of 32 days. The form stated "Concurrent with disability until RTW [return to work] or 12 weeks used." Madewell also received a letter from her employer concerning her leave under the FMLA. It stated that the FMLA period was from April 18, 2000, through May 19, 2000. The May 19, 2000, date had a diagonal line drawn through it, and Madewell testified that the leave was later extended. The letter also stated, in bold type, "Concurrent with disability until RTW date or when 12 weeks used. Notify FMLA if disability becomes non-certified."

On January 10, 2001, a deputy from the Division of Employment Security determined under the Missouri Employment Security Law that Madewell was disqualified for benefits until she had earned wages for insured work after October 4, 2000, equal to ten times her weekly benefit amount, on a finding that Madewell left work voluntarily on that date without good case attributable to the work or the employer. Madewell appealed to the appeals tribunal.

The appeals tribunal heard the matter on March 16, 2001. On April 2, 2001, the appeals referee entered findings of fact and conclusions of law that claimant quit her employment voluntarily without cause related to her work or employer. The Labor and Industrial Relations Commis-

sion affirmed this judgment on May 23, 2001. Madewell appeals the Commission's decision to this court.

## STANDARD OF REVIEW

This case is governed by Chapter 288, the Missouri Employment Security Law. In reviewing a decision of the Commission, an appellate court may not substitute its judgment on factual matters for that of the Commission. Section 288.210 provides that the Commission's findings of fact, if supported by competent and substantial evidence and absent fraud, shall be conclusive. Substantial evidence is evidence which has probative force on the issues, and from which the trier of facts can reasonably decide the case. *Nettie's Flower Garden, Inc. v. S.I.S., Inc.*, 869 S.W.2d 226, 231 (Mo.App.1993). This court is not bound by the Commission's conclusions of law, including statutory interpretation. *Division of Employment Sec. v. Hatfield*, 831 S.W.2d 216, 218 (Mo. App.1992). It is the court's duty to interpret and determine the legislative intent of the Missouri Employment Security law. *Division of Employment Sec. v. Labor & Indus. Relations Comm'n*, 617 S.W.2d 620, 622 (Mo.App.1981). Section 288.210, RSMo, Supp.1996, like § 287.495, RSMo 1994, provides that the reviewing court may grant relief only when 1) the commission acted without or in excess of its powers, 2) the decision was procured by fraud, 3) the facts found by the commission do not support the award, or 4) there was not sufficient competent evidence in the record to warrant the making of the award. In view of the fact that § 288.210, Supp.1996, and § 287.495, RSMo 1994, prescribe exactly the same grounds for the granting of relief on appellate review, we regard *Davis v. Research Medical Center*, 903 S.W.2d 557 (Mo.App.1995) (a worker's compensation case) as applicable to employment se-

curity decisions as well as worker's compensation decisions.

■ In *Davis*, which dealt with review of worker's compensation decisions, we said:

> Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Id.* at 571. Thus, to the extent this appeal involves issues of law, we do not defer to the Commission. To the extent that it involves evaluating evidence supporting findings of the Commission, there is a two-step process set out in *Davis*. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the over-

whelming weight of the evidence. *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App.1995).

Because the basic facts in this case are not disputed, and yet the significance of the facts can be viewed in different ways, this case involves primarily the application of the law to the facts.

■ The Commission's determination of whether an employee voluntarily left her employment or was discharged is a factual determination, and we will defer to the Commission as to its finding that the claimant left her employment voluntarily. *Sokol v. Labor & Indus. Relations Comm'n,* 946 S.W.2d 20, 24 (Mo.App.1997). The question of whether the claimant had good cause to leave her employment is a legal issue and thus we do not defer to the Commission's determination on the matter. *Id.* at 26.

### POINT I:

■ In her sole point on appeal, Madewell asserts that the Commission erred in affirming the appeals referee's decision that Madewell voluntarily left her employment, because the facts found by the Commission do not support the award denying benefits, and there was insufficient competent evidence in the record to warrant such a decision by the Division.

Madewell argues that the evidence showed she was disqualified as a result of failing to report to work on a specific date and time. She argues that she had "undisputed good cause" for not reporting as ordered.

Madewell points out that she alone presented evidence,[1] and the Division referee

---

1. The only evidence before the Commission's tribunal was Madewell's testimony and the documents she offered into the record. That undisputed evidence shows the following:

A) The claimant Madewell was a long term employee of employer AT & T;

B) Madewell entered into an employer approved medical leave;

offered no findings that he found her testimony lacking in credibility, only that he found her conclusion that she needed a physician's authorization to return to work to be unreasonable.

■ The hearing officer did not indicate that any of Madewell's testimony was disbelieved. Nor did the hearing officer indicate why it should be disbelieved as is required if the hearing officer makes a finding contrary to undisputed evidence. *See Vaughn v. Labor & Indus. Relations Comm'n,* 603 S.W.2d 63, 66 (Mo.App.1980)

Madewell argues if the Division's questioning of the "credibility" of Madewell's position that MetLife "could somehow overrule the employer's supervisors" is the basis for the referee's decision, then not only is there no evidentiary basis for the referee's contentions on this point, but that decision is particularly suspect. We disagree. The referee is capable of deciding whether Madewell reasonably believed that she had to follow the instructions of the insurance company rather than her employer. We are not persuaded that we can say the decision was "particularly suspect."

Madewell argues that the "conclusion" of the Division referee that Madewell should have reported to work without a medical release is not a factual finding, as acknowledged by the Division in its decision; it is rather an application of the law to the facts. We agree that the issue of good cause is a legal issue which we resolve *de novo.* However, we note that the legal issue rests upon certain factual determinations made by the Commission, including facts such as whether her leave had expired whether she had taken steps to contact the employer about a return to work, and whether she really believed she had to wait for the insurance company's approval to return to work.

The dispute that led to her separation from employment was not related to her right to a leave, but rather to her failure to report at a specific time as directed by a company supervisor. The appeals tribunal's decision, adopted by the Commission, found, based upon a consideration of all the evidence, that Madewell quit her work by not returning to the job on October 3, 2000, as directed by the employer. The Commission's determination that she voluntarily left her employment is a factual finding to which we defer. *Sokol v. Labor & Indus. Relations,* 946 S.W.2d 20, 24 (Mo.App.1997). There was evidence supporting this finding. Madewell's own exhibit, the letter from her employer, stated that Madewell was in an "unauthorized absence" category after September 11, 2000. The referee found that Madewell's

C) While on medical leave, Madewell was instructed that MetLife was the agent of the employer and that she should handle leave questions with them;

D) On the evening of October 2, 2000, Madewell was first informed that the employer had discontinued the leave and wanted her to report for work the next morning at 7:00 a.m.;

E) Once ordered to report, the claimant immediately attempted to contact her doctor (scheduling an appointment for the first available time, October 4), together with the agency MetLife, to whom she had been directed to work through while on leave.

MetLife instructed Madewell not to report without a physician's release;

F) Madewell attempted to contact the supervisor who told her to report on October 3 but her message left with his office went unreturned;

G) Madewell was officially discharged for failing to report to work the morning of October 3, 2000; and

H) The employer maintained a common policy by which an employee who was out on medical leave would not be permitted to return to work unless [the employee] provided a written authorization to return to work from a physician.

FMLA[2] leave expired before October 3, 2000. Madewell's own exhibit states that she had only thirty two days remaining for FMLA leave at the start of this leave. There was no showing by Madewell that she was under permanent disability or that her medical condition was attributable to or aggravated by her employer. *Fifer v. Mo. Div. of Employment Sec.,* 665 S.W.2d 81, 82 (Mo.App.1984).

The referee could conclude that if Madewell had wanted to continue in her employment relationship, she should have contacted her employer to discuss her desire to continue to work or to continue her leave beyond the FMLA leave. The letter from her employer states that her leave is "concurrent with disability until RTW date or when 12 weeks used." Accordingly, Madewell should have contacted her employer to ascertain her return to work date at the time her FMLA leave was expiring to resolve any differences she may have had. *See Clark v. Labor & Indus. Relations Comm'n.,* 875 S.W.2d 624, 629 (Mo.App. 1994).

Although the employer characterized the separation from work as a "discharge," such description was not binding on the referee. Madewell brought about her separation by her own volitional act of failing to report for work as directed by her supervisor on October 3, 2000.

 Even without the employer appearing, appellant had the burden of proof to show that she was entitled to receive unemployment compensation benefits. *O'Dell v. Division of Employment Sec.,* 376 S.W.2d 137, 142 (Mo.1964). The referee concluded that Madewell did not do what she reasonably could to preserve her position with the employer. By failing to contact the employer concerning her return to work date after the leave expired,

she left herself vulnerable to discharge. Then, when she received a specific order to return to work October 3, she failed to show up as ordered. Looking at the record as a whole, and drawing all reasonable inferences therefrom, we believe the finding of the Commission that Madewell left her work voluntarily was not against the overwhelming weight of the evidence.

 We also conclude that the Commission did not err in determining that she left work without "good cause" attributable to the "work or the employer." The employer had no duty to extend her leave time beyond the FMLA period. The fact that the employer instructed her to report to work the next day was itself an act of grace.

In an analogous case, *Reutzel v. Missouri Division of Employment Security,* 955 S.W.2d 239 (Mo.App.1997), the Commission held that the claimant was disqualified from receiving benefits because she voluntarily terminated her employment without good cause, and the appellate court affirmed that decision. *Id.* Diagnosed with a blood clot in her aorta, the claimant was placed on sick leave for a period of 26 weeks. *Id.* A little over a month before her sick leave was due to expire, the employer's personnel manager sent claimant a letter notifying her that her sick leave would expire on August 16. *Id.* Claimant was advised that if she failed to report to work on August 19, the employer would consider her employment terminated. *Id.* Shortly after receiving the letter, the claimant informed the personnel manager in a telephone conversation that her next scheduled doctor's appointment was October 8th. *Id.* The personnel manager advised the claimant that the employer did not want her off work that long. *Id.* Claimant then called for an earlier doctor's

**2.** Family and Medical Leave Act of 1993, 29 C.F.R. § 825

appointment. *Id.* Although she scheduled an appointment for August 22, she did not contact the employer further until August 26 when she notified the employer that she could come back to work, since the doctor had released her to return to work when he saw her August 22. *Id.* At that point the claimant learned she did not have a job, and she filed her initial claim for unemployment benefits on August 30. *Id.*

The Division determined that the claimant was disqualified from receiving benefits because she had voluntarily left work without good cause attributable to her employer. *Id.* In its review, the Commission concluded:

> This case is similar to those cases involving leaves of absence. An employee who takes a medical leave of absence without a guarantee of reemployment has voluntarily terminated employment. ... In this instance, the claimant was guaranteed a job only if she returned to work by August 19, 1996. She had no guarantee of a job subsequent to that date. Her separation from employment is a voluntary quit rather than a discharge.
>
> It also can not be said that the voluntary quit was for good cause attributable to the work or the employer.

*Reutzel,* 955 S.W.2d at 240 (citations omitted).

The claimant in *Reutzel* argued in her first point on appeal that the Commission's finding that she did nothing to alert the employer that she needed "a few extra days" in which to consult her doctor was not supported by competent and substantial evidence, in that "the undisputed testimony [showed] that the claimant did contact the employer to discuss this matter." *Id.* at 241.

The court denied the claimant's first point, however, on the basis that when the claimant was asked whether she told employer that she had scheduled a doctor's appointment for August 22, she answered, "No." When asked what she did to resolve the problem that her sick leave expired prior to her doctor's appointment, she answered, "I don't guess I did anything." *Id.*

In the instant case, Madewell failed to bring up to her employer on October 2 that she was waiting for a doctor's release. Had Madewell shown up for work as directed, she would have retained her right to discuss the fact that she could not get a doctor's release before the required return to work date. These facts are somewhat analogous to the actions of the claimant in *Reutzel.* The Commission could reasonably have determined that Madewell did not do enough to maintain her position of employment after being informed that she would be terminated if she did not report to work on October 3rd. The Commission could have reasonably made its findings based on the evidence before it. *Wingo v. Pediatric and Adolescent Medical Consultants,* 932 S.W.2d 898, 899 (Mo.App.1996).

In *Turner v. Labor and Indus. Relations Comm'n,* 793 S.W.2d 191 (Mo.App. 1990), the court held the employee was not entitled to benefits because her actions in not timely notifying her employer or returning to work amounted to her voluntarily terminating her employment. The *Reutzel* court quoted from *Turner:* "It is clear that the direct and immediate cause of claimant's unemployment was her inaction in not notifying her employer...." *Id.* at 242 (*quoting Turner,* 793 S.W.2d at 195). The *Reutzel* court concluded: "Here, as in *Turner,* claimant was advised when she would be required to return to work in order to retain her job. She failed to do so. The commission's decision that this amounted to a voluntary termination of employment by claimant is supported by

competent and substantial evidence on the whole record." *Id.*

As in both *Turner* and *Reutzel,* the claimant in the case at hand, who knew she had overstayed her authorized leave, was made aware that she must report to work the next day, October 3rd, or her employment would be terminated. She acknowledged that she was physically ready to return to work October 3rd. She chose, however, to follow the directions of the insurance company, which could not fire her, rather than the specific directions of her employer, who not only *could* fire her but, she should have known, probably *would* fire her if she did not report as directed. The Commission could conclude that when she failed to report to work on that date, her actions amounted to a voluntary termination of employment without good cause attributable to her work or her employer.

## CONCLUSION

For the foregoing reasons, the Commission's decision is affirmed.