CNW FOODS, INC., d/b/a Food 4 Less, Employer–Appellant,

v.

Kevin DAVIDSON, Claimant–Respondent,

and

Division of Employment Security, Respondent.

No. 25953.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 26, 2004.

Todd A. Johnson, Springfield, for appellant CNW Foods, Inc., d/b/a Food 4 Less.

Kevin Davidson, Joplin, pro se.

Division of Employment Security of Jefferson City, did not file a brief, respondent.

JEFFREY W. BATES, Judge.

Employer CNW Foods, Inc. ("CNW"), appeals from an order of the Labor and Industrial Relations Commission ("Commission") finding claimant Kevin Davidson ("Davidson") eligible for unemployment benefits pursuant to Missouri's Employment Security Law, §§ 288.010–.500.[1] In two interrelated points of error, CNW claims the Commission's factual finding that Davidson was discharged from his employment is against the overwhelming weight of the evidence and is not supported by sufficient evidence. We affirm.

## I. Standard of Review

The parameters of our review of the Commission's order are established by constitutional provision and by statute. Article V, § 18 of the Missouri Constitution directs us to determine whether the Commission's decision is "authorized by law" and whether it is "supported by competent and substantial evidence upon the whole record." [2] *Pulitzer Publishing Co. v. Labor & Indus. Relations Comm'n,* 596 S.W.2d 413, 417 (Mo. banc 1980). The scope of our review is further circumscribed by § 288.210, which states, in pertinent part, as follows:

Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate

court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the decision was procured by fraud; (3) That the facts found by the commission do not support the award; or (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

■ In determining whether the Commission's decision is authorized by law, we are not bound by its conclusions of law or its application of law to facts. *Shelby v. Hayward Baker, Inc.,* 128 S.W.3d 164, 165–66 (Mo.App.2004). We independently review such questions without giving any deference to the Commission's conclusions. *Miller v. Kansas City Station Corp.,* 996 S.W.2d 120, 122 (Mo.App.1999); *Bunch v. Division of Employment Sec.,* 965 S.W.2d 874, 877 (Mo.App.1998).

■ The Commission's factual findings, on the other hand, are treated deferentially. Determining the credibility of witnesses is one of the Commission's functions. *Burns v. Labor & Indus. Relations Comm'n,* 845 S.W.2d 553, 555 (Mo. banc 1993); *England v. Regan Marketing, Inc.,* 939 S.W.2d 62, 66 (Mo.App.1997). Absent fraud, the Commission's factual findings are conclusive on appeal if they are supported by competent and substantial evidence upon the whole record and are not clearly against the overwhelming weight of the evidence. *See Burns,* 845 S.W.2d at 554–55; *Pulitzer,* 596 S.W.2d at 417; *Baby–Tenda Corp. v. Hedrick,* 50 S.W.3d

---

1. All references to statutes are to RSMo (2000).

2. All references to constitutional provisions are to the Missouri Constitution of 1945.

369, 377 (Mo.App.2001). When the Commission as the trier of fact has reached one of two possible conclusions from the evidence, this Court will not reach a contrary conclusion even if we could reasonably do so. *Clark v. Labor & Indus. Relations Comm'n*, 875 S.W.2d 624, 626–27 (Mo.App. 1994). If the evidence before the Commission would warrant either of two opposed findings, we are bound by the administrative determination. *See Pulitzer*, 596 S.W.2d at 417. It is irrelevant that there is evidence to support the contrary finding. *Id.* at 417.

Although *Burns* and *Pulitzer* are still authoritative on the points of law for which they have been cited thus far, one aspect of the standard of review discussions contained therein requires further attention. Each case directs an appellate court to consider the evidence and all reasonable inferences derived therefrom in the light most favorable to the findings and decision of the commission, disregarding all opposing and unfavorable evidence. *Burns*, 845 S.W.2d at 555; *Pulitzer*, 596 S.W.2d at 417. We believe this rule should no longer be followed because it is inconsistent with the Supreme Court's more recent pronouncements in *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003), and *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786 (Mo. banc 2004).

In *Hampton*, the Supreme Court reviewed the commission's decision in a worker's compensation case. There, the standard of review as to the commission's factual findings was governed by Mo. Const. art. V, § 18 and RSMo § 287.495.1. In our view, § 287.495.1 and § 288.210 are virtually identical to one another. The Supreme Court held that, "[t]here is nothing in the constitution or section 287.495.1 that requires a reviewing court to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton*, 121 S.W.3d at 223.

■ In *Lagud*, the Supreme Court reviewed an administrative decision of the Kansas City Board of Police Commissioners. The standard of review for the Board's factual findings was governed by Mo. Const. art. V, § 18 and RSMo § 536.140.2. In our view, § 536.140.2 and § 288.210 are substantially similar because § 536.140.2(3) requires an appellate court to determine whether the administrative agency's decision "[i]s unsupported by competent and substantial evidence upon the whole record[.]" Citing *Hampton*, the Supreme Court held that a reviewing court must consider the whole record in determining whether there is sufficient, competent and substantial evidence to support the agency's decision. *Lagud*, 136 S.W.3d at 791. In so holding, the Court overruled prior contrary precedent:

> This Court must look to the whole record in reviewing the Board's decision, not merely at that evidence that supports its decision. To the extent prior cases instruct that on appeal the evidence should be viewed in the light most favorable to the decision of the agency, they should no longer be followed.

*Id.* Therefore, we will consider the whole record in deciding whether the Commission's decision is supported by competent and substantial evidence. *Lagud*, 136 S.W.3d at 791; *Hampton*, 121 S.W.3d at 223.

## II. Statement of Facts and Procedural History

On November 18, 2001, Davidson was hired by CNW to work at its Food 4 Less store in Joplin, Missouri. He worked 32 to 36 hours per week and was considered a full-time employee. Since CNW employed 70 people at its Joplin store, it was subject to the requirements of the federal Family

and Medical Leave Act ("FMLA"), 29 U.S.C.A. §§ 2601–2654 (West 1998).

In March 2003, Davidson was working in the meat room as a wrapper and stocker. He was making $7.30 per hour at this job. His immediate supervisor was Gene Lawless. Davidson's duties in the meat room included lifting 80 pound boxes of meat. Davidson worked his normal shift on March 5th, and he was off work the next day.

On March 7th, Davidson was involved in a nonwork-related bicycle accident and tore a muscle in his shoulder. Because of that injury, he was not able to perform his duties in the meat room. He notified CNW of his injury and was told that he could return to work once he had obtained a full release from his physician. In the meantime, Davidson was placed on extended leave while he recuperated. Davidson asked whether he could work with his arm in a sling, but Lawless would not let Davidson do so because there was not much work he could do in the meat room in that condition. Although Davidson was not able to work, he was not taken off the work schedule. Lawless "just worked the schedule around [Davidson]" while he recovered.

Davidson was released to return to light-duty work on March 11, 2003, subject to the restriction that he not lift more than 30 pounds for two weeks. Davidson took this to office manager Jerri Renfrow ("Renfrow"), but she told him he could not return to work at Food 4 Less until he received a full release from his doctor. On March 26, 2003, Davidson was released by his doctor to work "as tolerated." He took this release to Food 4 Less, but he was not permitted to return to work since it was not a full release. During a conversation on this date with Renfrow and Lawless, Davidson was asked if he was able to lift 80 pounds. He reported that he was not

yet able to lift even 40 pounds. Davidson asked for additional time off to recuperate, which was granted.

Davidson was on the schedule to work on March 30th. That morning, Davidson called CNW and spoke to Renfrow. During that conversation, Davidson told her that "because he had had this type of injury before and he knew what the healing process was that he did not feel like that he was physically able to do that job then at that time. That he wanted to give it a little bit more of healing time." Davidson then discussed his request for additional time off with Lawless. He responded by telling Davidson that he would have to be replaced. Davidson asked if there was other work he could do, but Lawless said there was none available. Thus, despite Davidson's request for additional medical leave to recuperate, he was terminated by CNW on March 30th.

On April 12, 2003, CNW hired another employee to replace Davidson in the meat room. On April 21, 2003, Davidson received a full release from his doctor to return to work and other activities without restrictions.

Davidson filed an initial claim for unemployment benefits on March 12, 2003. On March 14, 2003, Renfrow filed a wage information form with the Division of Employment Security ("Division") which stated that Davidson was "beginning an extended leave" starting March 6, 2003, and his "return from extended leave" would occur "when he receives a full release from Dr." On March 20, 2003, CNW filed a letter with the Division protesting Davidson's claim on the ground that he was still CNW's employee. The protest letter stated: "Kevin [Davidson] was in a bicycle accident and has not been able to work his job. Will return to work as soon as he receives a full release from Dr." A deputy determined that Davidson

was entitled to unemployment benefits because he had been discharged by CNW on March 8, 2003. The deputy concluded that Davidson had been discharged because he could not physically perform his job, and CNW had no other available work that Davidson could do.

CNW appealed the deputy's determination to the Appeals Tribunal. During a telephone hearing, a tribunal referee was presented with the foregoing facts concerning Davidson's employment and the reason why he no longer worked for CNW. In addition, the wage information form and the protest letter were included as part of the record considered by the referee. The referee also heard testimony from both Davidson and Renfrow. Davidson testified that CNW required him to have "a full release in order to be able to return to work at Food 4 Less." His testimony was completely confirmed by Renfrow. She testified that after Davidson was injured, "he was off for that until he could come back and have a full release and come back to work." During Renfrow's testimony, she conceded that CNW was covered by the FMLA and that Davidson had already worked for CNW more than a year when he was injured. When the referee asked Renfrow why she did not offer Davidson additional leave pursuant to the FMLA in response to his March 30th request, she responded, "I didn't even realize that it could be at that point." The tribunal referee modified the deputy's initial decision and concluded that Davidson was entitled to unemployment benefits because he was discharged by CNW on March 30th. The referee's conclusion was based on the following reasoning:

> It appears that claimant was entitled to leave under the Family Medical Leave Act [sic]. He had worked for the employer over one year, and the employer has more than 50 employees. Thus, the claimant should have been entitled to up to twelve weeks of unpaid leave. The claimant was never offered Family Medical Leave and his employment ended as a result. If the employer had offered the claimant Family Medical Leave and afforded him the twelve-week period in which to return to work with a full release, the claimant's employment would have been preserved. Thus, the separation from employment on March 30, 2003, indicates a discharge. The discharge was because of claimant's health situation, and there is no evidence of any misconduct connected with work on the part of the claimant. It is concluded that the claimant was discharged on March 30, 2003, but not for misconduct connected with work.

CNW filed an application for review with the Commission. It affirmed the decision of the Appeals Tribunal and adopted it as the decision of the Commission in this matter. CNW filed a timely notice of appeal to this Court.

### III. Discussion and Decision

■ Both of CNW's points relied on challenge the sufficiency of the evidence to support the Commission's finding that Davidson was discharged from his employment. CNW claims Davidson voluntarily separated from his employment with CNW by not coming to work on March 30th as ordered, and the Commission's contrary finding is against the overwhelming weight of the evidence and is not supported by substantial evidence. Because of the interrelated nature of the points, we consider them together.

■ The Commission's finding on the issue of whether an employee voluntarily left his employment or was discharged is a factual determination. *Shelby v. Hayward Baker, Inc.*, 128 S.W.3d 164, 169 (Mo.App. 2004); *Quik 'N Tasty Foods, Inc. v. Div. of*

*Employment Sec.*, 17 S.W.3d 620, 624 (Mo. App.2000); *Sokol v. Labor and Indus. Relations Comm'n*, 946 S.W.2d 20, 24 (Mo. App.1997). Therefore, we will affirm the Commission's factual determination that Davidson was discharged if this finding is supported by competent and substantial evidence on the record as a whole. *Shelby*, 128 S.W.3d at 169; *Sokol*, 946 S.W.2d at 24.

CNW asserts the Commission's finding is not supported by competent and substantial evidence, or is against the overwhelming weight of the evidence, for two reasons: (1) CNW accepted Davidson's medical release to work "as tolerated" as a full release; and (2) Davidson's inability to perform his job duties due to a nonwork-related injury constitutes a voluntary separation without good cause attributable to the employer. We reject both arguments.

In our view, the Commission's factual finding that Davidson was discharged because he did not have a full release is supported by competent and substantial evidence. During the telephone hearing conducted by the appeals referee, Davidson testified that he was required to have a full release from his doctor before he could return to work. His testimony was corroborated by Renfrow's own testimony, as well as the wage information form and the protest letter that she filled out and filed with the Division on CNW's behalf. CNW did not accept Davidson's March 26th release to work "as tolerated" as a full release that required him to return to work. When asked about this issue, Davidson gave the following testimony:

Q. And then in reference to Claimant's Exhibit Number 4, which is the statement from Sports—Sports Surgical Specialists. It says you could return to work on March 26, work as tolerated. What did you do with that Exhibit?

A. Yes, I took it to them and was told what does work as tolerated mean. If you know how to be human to someone you know what it means. They said it's not, again, that it's not a full release and that I would need a full release to return to work at Food 4 Less.

In Renfrow's testimony, she admitted that Davidson did not believe he was able to return to his job after receiving this release, and he asked for more time off work to recuperate. CNW granted his request. Clearly, the March 26th release was not treated by CNW as meaning that Davidson was fully healed and ready to return to his duties.

We also are not persuaded by CNW's argument that Davidson, in essence, quit his job because he was unable to perform his duties due to a nonwork-related injury. We find ample support for the Commission's factual determination that Davidson's job would have been preserved if he had received the additional medical leave to which he was entitled pursuant to the FMLA.

The FMLA became effective in 1993. *See* 29 U.S.C.A. § 2601. This act applies to any employer who has employed 50 or more employees during 20 or more calendar workweeks in the current or a preceding calendar year. 29 U.S.C.A. § 2611(4)(A). It covers any employee who has worked for the employer at least 12 months and who has at least 1,250 hours of service during the previous 12–month period. 29 U.S.C.A. § 2611(2)(A). An eligible employee is entitled to take up to 12 workweeks of leave during any 12–month period for four specified reasons, including leave required "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D). A serious health condi-

tion is defined to include an injury that involves "continuing treatment by a health care provider." 29 U.S.C.A. § 2611(11)(B). One of the most significant protections bestowed by the FMLA upon an eligible employee is the right "to be restored by the employer to the position of employment held by the employee when the leave commenced; or ... to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C.A. § 2614(a)(1)(A-B).

As the employer of 70 persons, CNW was obligated to comply with the FMLA. Davidson qualified as an eligible employee because he had been employed by CNW for 14 months, and he had more than 1,250 hours of service during the preceding calendar year.[3] Davidson had a serious health condition that made him unable to perform the functions of his job, and he was under continuing medical treatment for that condition. Therefore, he was entitled to take up to 12 workweeks of leave to recuperate from his injury. Since he was injured on March 7, 2003, he was eligible for FMLA leave through May 30, 2003. Davidson requested additional medical leave on March 30, 2003. If his request had been granted, he would have received the full medical release CNW required by April 21, 2003. At that point, CNW would have been obligated by the FMLA to restore Davidson to his job in the meat room or give him another job with equivalent pay and benefits. Instead of granting the leave to which Davidson was entitled, CNW violated the FMLA by denying his request for additional medical leave and ordering him to return to work.

We reject, as spurious, CNW's argument that it could make Davidson ineligible for unemployment benefits pursuant to § 288.050.1(1) by simply ordering him back to work in violation of federal law, thereby rendering his failure to do so a voluntary separation without good cause attributable to CNW. *See Hutchens v. Board of Review*, 368 N.J.Super. 9, 845 A.2d 164, 166 (2004) (claimant was not ineligible for unemployment benefits on the ground that she voluntarily left her employment for personal reasons not attributable to her employer if she failed to return to work because her request for FMLA leave was improperly denied); *cf. In re Richards*, 303 A.D.2d 821, 755 N.Y.S.2d 324, 324 (N.Y.App.Div.2003) (where claimant neither returned to work nor submitted request for leave pursuant to the FMLA, she could be denied unemployment benefits because she voluntarily left her employment without good cause). We conclude the Commission's decision that Davidson was discharged by CNW on March 30, 2003, but not for misconduct connected with work, is supported by substantial and competent evidence on the whole record. We defer to the Commission's finding on this question of fact. *See City of Branson v. Santo*, 111 S.W.3d 910, 914 (Mo.App.2003); *Quik 'N Tasty Foods, Inc. v. Div. of Employment Sec.*, 17 S.W.3d 620, 625 (Mo.App.2000).

In so holding, we have not ignored the cases upon which CNW relies: *Fifer v. Missouri Div. of Employment Sec.*, 665 S.W.2d 81 (Mo.App.1984); *Duffy v. Labor & Indus. Relations Comm'n*, 556 S.W.2d 195 (Mo.App.1977); *Smith v. Labor and Indus. Relations Comm'n*, 869 S.W.2d 101 (Mo.App.1993); and *Madewell v. Division of Employment Sec.*, 72 S.W.3d 159 (Mo. App.2002). CNW cites these cases to support the proposition that an employee's

---

**3.** Assuming Davidson worked only 32 hours per week, he would have accrued 1,250 hours of service after 40 weeks of employment.

separation from work due to a disability that was neither caused nor aggravated by his employment constitutes a voluntary separation without good cause attributable to his employer. We find all four cases readily distinguishable. *Fifer, Duffy* and *Smith* were all decided before the FMLA was adopted. Therefore, they have no bearing on the case at bar, in which Davidson was guaranteed the right to return to his job so long as he was physically able to do so within the 12-workweek period of medical leave authorized by the FMLA. *Madewell* is factually distinguishable because the employee there failed to return to work after her FMLA leave had expired. The western district of this Court held that "[t]he employer had no duty to extend her leave time beyond the FMLA period." *Madewell*, 72 S.W.3d at 165. This principle has no relevance in the case at bar because Davidson's period of FMLA medical leave had not expired when he was ordered to return to work. Therefore, *Madewell* does not aid CNW.

The Commission's factual finding that Davidson was discharged by CNW is supported by competent and substantial evidence on the whole record, and it is not against the overwhelming weight of the evidence. Therefore, we affirm the Commission's decision that Davidson was eligible for unemployment benefits.

PARRISH, J. and SHRUM, J., Concur.