**Kirk AYERS, Appellant,**

v.

**SYLVIA THOMPSON RESIDENCE CENTER, Defendant,**

**Division of Employment Security, Respondent.**

No. WD 66971.

Missouri Court of Appeals,
Western District.

Jan. 16, 2007.

Danieal H. Miller, Columbia, MO, for Appellant.

Cynthia A. Quetsch, Jefferson City, MO, for Respondent.

Sylvia Thompson Residence Center, Defendant.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN, J., and GENE HAMILTON, Special J.

ROBERT G. ULRICH, P.J.

Kirk Ayers appeals the Labor and Industrial Relations Commission's order denying his claim for unemployment benefits pursuant to Missouri's Employment Security Law, § 288.010, et seq. The Commis-

sion determined that Mr. Ayers was disqualified from receiving benefits because he left work voluntarily without good cause attributable to the work or to the employer. Mr. Ayers raises two points on appeal. First, he contends that the evidence showed that he did not leave work voluntarily but was discharged. Secondly, he contends that the evidence showed that his discharge was not for misconduct connected to the work. The Commission's order is affirmed.

### Facts

Mr. Ayers was employed as a certified nurses' aide at Sylvia Thompson Residence Center ("Center" or "Employer"). Employer's written absenteeism policy required, "All employees must call in at least 2 hours in advance of your duty time." The policy further provided, "If an employee does not show up or call in, it will be considered job abandonment and voluntary termination." Mr. Ayers received a copy of the policy when Employer hired him.

Mr. Ayers was scheduled to work on July 22, 23, and 24, 2005. On July 22, after his shift began, he called the charge nurse on duty at the Center and told her he would not be at the Center to perform his duties. At the hearing, Mr. Ayers claimed that he told the nurse that he would also not be at the Center on July 23 and 24. Employer claimed that Mr. Ayers did not tell the charge nurse that he would also be absent on July 23 and 24. Mr. Ayers admitted that he was aware that he was supposed to call Employer each day that he would be absent. That he did not call Employer July 23 and 24 is not contested. On July 25, Mr. Ayers contacted Employer to explain his absences. He stated that he had violated his probation for driving with a revoked or suspended driver's license and was fearful that he

would go to jail. Mr. Ayers further stated at the hearing that his absences from July 22 to 24 were due to unreliable childcare and transportation. Mr. Ayers was advised on July 25 that Employer no longer employed him.

Mr. Ayers filed his initial claim for unemployment benefits on September 20, 2005. Employer contested the claim asserting that Mr. Ayers "[quit] of his own accord by not phoning or showing up for his shift." A deputy with the Division of Employment Security determined that Mr. Ayers was discharged for misconduct connected with work because he was absent from work on July 22 and 23, 2005, and the absences were not properly reported. Mr. Ayers appealed the deputy's decision to the Appeals Tribunal.

The Appeals Tribunal conducted a telephone hearing. Following the hearing, it modified the deputy's decision finding that Mr. Ayers left his work voluntarily without good cause attributable to the work or the employer. Mr. Ayers filed an application for review before the Commission. The Commission affirmed and adopted the decision of the Appeals Tribunal with one member dissenting. This appeal by Mr. Ayers followed.

### Standard of Review

 Article 5, Section 18 of the Missouri Constitution and section 288.210, RSMo 2000, govern appellate review of an unemployment compensation case. *Ragan v. Fulton State Hosp.*, 188 S.W.3d 473, 474 (Mo.App. E.D.2006). On review, an appellate court may modify, reverse, remand for rehearing, or set aside the decision of the Commission only where: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in

the record to warrant the making of the award. § 288.210, RSMo 2000. In the absence of fraud, the Commission's factual findings are conclusive if supported by competent and substantial evidence. § 288.210, RSMo 2000; *Ragan,* 188 S.W.3d at 474. Questions of law are reviewed independently, and the appellate court is not bound by the Commission's conclusions of law or its application of law to the facts. *McClelland v. Hogan Pers., LLC,* 116 S.W.3d 660, 664 (Mo.App. W.D.2003). On matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations. *Willcut v. Div. of Employment Sec.,* 193 S.W.3d 410, 412 (Mo.App. E.D. 2006).

### Discussion

 The Commission found that Mr. Ayers was disqualified from receiving benefits under section 288.050, RSMo Cum. Supp.2005. That section provides that a claimant shall be disqualified if the deputy finds that "the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." § 288.050.1(1), RSMo Cum.Supp.2005. This disqualifying provision is strictly and narrowly construed in favor of finding that an employee is entitled to compensation. *Sokol v. Labor & Indus. Relations Comm'n,* 946 S.W.2d 20, 23 (Mo.App. W.D. 1997). Nonetheless, where an employer claims that the employee voluntarily left his employment without good cause, the employee has the burden to proving either that he did not voluntarily leave work but rather was discharged or that he left work for good cause attributable to the work or the employer. *Id.*

 In his first point on appeal, which is dispositive, Mr. Ayers claims that the evidence showed that he did not leave work voluntarily but was discharged. One leaves work voluntarily, as opposed to being discharged, when he leaves of his own accord and volition. *Shields v. Proctor & Gamble Paper Prods. Co.,* 164 S.W.3d 540, 543–44 (Mo.App. E.D.2005). An employee is disqualified from benefits if he *caused* his dismissal by his wrongful action or inaction or his choosing to not be employed. *Davis v. Sch. of the Ozarks, Inc.,* 188 S.W.3d 94, 101 (Mo.App. S.D.2006)(quoting *Shields,* 164 S.W.3d at 544). "The causation envisioned by the statutes 'is that having as its direct and immediate consequence the claimant's unemployment.'" *Id.* (quoting *Shields,* 164 S.W.3d at 544). Often, "'causation depends on whether the final act needed to effectuate separation was committed by the employee or by the employer.'" *Id.* (quoting *Shields,* 164 S.W.3d at 544).

Mr. Ayers relies on the case *Moore v. Swisher Mower & Machine Co.,* 49 S.W.3d 731 (Mo.App.W.D.2001), in arguing that he did not leave work voluntarily but was discharged. In Moore, the claimant was arrested and unable to post bond. As a result, he neither reported to work for three consecutive days, nor did he notify his employer that he would be absent. The claimant maintained his innocence of the charges, which were eventually dismissed. The employer had a written absentee rule requiring employees to call in each day if they had to be absent from work. It also provided that failure to follow the rule and report absences for three consecutive work days would be grounds for termination. *Id.* at 734. The Commission determined that the claimant was disqualified from receiving unemployment benefits because he voluntarily left work. *Id.* at 735–36. The Eastern District reversed the Commission's determination finding that the claimant did not voluntarily leave work but was discharged for misconduct for violating the employer's absen-

teeism policy by failing to either report for work or call in his absences for three consecutive days. *Id.* at 737–39.

This case, however, is distinguishable from Moore. While the employer's policy in *Moore* provided that failure to follow the absentee rule and report absences for three consecutive work days would be *grounds for termination,* Employer's policy in this case specifically provided, "If an employee does not show up or call in, it will be considered *job abandonment* and *voluntary termination.*" (Emphasis added.) The policy in this case is similar to the employer's sick leave policy in the case *Turner v. Labor & Industrial Relations Commission,* 793 S.W.2d 191 (Mo.App. W.D.1990).

In *Turner,* the employer's policy required that a person too ill to come to work must notify the company of the illness or call within three days; otherwise, the employee is considered self-terminated. *Id.* at 192. The claimant admitted she was aware that three days of not appearing for work and not informing her employer that she would not appear was a voluntary quit. *Id.* at 193. In that case, the claimant admitted herself as a patient into a hospital on a Saturday for extreme emotional and nervous distress at the insistence of her therapist and a psychiatrist. On Sunday, the claimant's therapist telephoned claimant's employer and told him the claimant was hospitalized and would require a week of hospitalization. The employer excused the claimant from work for one week of hospitalization. On Monday, the claimant checked herself out of the hospital against medical advice and returned to her home where she stayed for the week. She was not under any direct medical care after checking out of the hospital, did not return to work, and did not telephone her employer. On Thursday, the employer learned that claimant had

checked herself out of the hospital on Monday. Having heard nothing from the claimant for the entire week, the employer determined on Saturday that the claimant had voluntarily quit her job in accordance with company policy. *Id.* The Commission determined that in light of the claimant's failure to notify the employer for one week after checking herself out of the hospital, she voluntarily left her work without good cause attributable to her work or the employer. *Id.* at 194. This court affirmed the Commission's decision finding that the cause of the claimant's unemployment was her failure to contact the employer for three consecutive days after checking out of the hospital against medical advice with the full understanding that failure to report to work or contact the employer for three consecutive days was uniformly treated by the employer as a self-termination. *Id.* at 194–95.

■ As with the claimant in *Turner,* Mr. Ayers was aware of Employer's policy that an employee's failure to show up or call each day to inform Employer that he would be absent is considered job abandonment or voluntary termination. Mr. Ayers was scheduled to work July 22, 23, and 24, 2005. On July 22, Mr. Ayers called Employer and reported that he would not be at the Center that day. He did not call Employer on July 23 or 24. While Mr. Ayers claimed that he told the charge nurse he would also be absent on July 23 and 24, Employer denied that he did. Whether Mr. Ayers was required to call Employer and inform Employer each day that he would be absent from work for good cause in compliance with Employer's policy or whether his informing Employer on July 22 that he would be absent from work on July 23 and 24 substantially complied with Employer's policy requiring advance notice of employee absences need not be determined. The Commission be-

lieved the testimony of Employer that Mr. Ayers did not provide notice that he would be absent from work on July 23 and 24, and the court defers to the Commission's credibility determination. *Willcut,* 193 S.W.3d at 412. Knowing Employer's policy that failure to report to work or call Employer to provide notice of an anticipated absence from work would constitute a voluntary quit, Mr. Ayers directly and immediately caused his unemployment when he failed to notify Employer of his need to be absent on July 23 and 24. Mr. Ayers, therefore, voluntarily left his employment without good cause attributable to his work or to his employer. The Commission did not misapply the law, and its decision is supported by competent and substantial evidence.[1]

The order of the Commission is affirmed.

LOWENSTEIN, J. and HAMILTON, Sr. J., concur.

---

1. Because point one is dispositive, point two regarding misconduct is not addressed.