Norman L. SHELBY, Claimant–
Appellant,

v.

HAYWARD BAKER, INC., employer,
and Division of Employment
Security, Respondents.

No. 25784.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 25, 2004.

Donald Rhodes, Bloomfield, MO, for Appellant.

Larry R. Ruhmann, St. Louis, MO, for Respondent Missouri Department of Labor and Industrial Relations Division of Employment Security.

Hayward Baker, Inc., Odenton, MD, Pro Se.

JEFFREY W. BATES, Judge.

Norman Shelby ("Shelby") appeals from a decision of the Labor and Industrial Relations Commission ("Commission") denying his claim for unemployment benefits pursuant to Missouri's Employment Security Law, § 288.010, *et seq.*[1] The Commission decided that Shelby was not entitled to such benefits because he left work voluntarily without good cause attributable to such work or to his employer. In three interrelated points of error, Shelby contends that the Commission's decision was not supported by competent and substantial evidence and that the Commission misapplied the law in deciding Shelby left work "without good cause" so as to come within the disqualifying language of § 288.050.1(1). We affirm the Commission's decision.

## I. Standard of Review

The scope of our review of the Commission's decision is delineated both by our state constitution and by statute. We are required by Mo. Const. art. V, § 18 to determine whether the Commission's decision is "authorized by law" and whether it is "supported by competent and substantial evidence upon the whole record."[2] *Pulitzer Publishing Co. v. Labor and Industrial Relations Comm'n,* 596 S.W.2d 413, 417 (Mo. banc 1980). The manner in which we carry out these constitutional mandates, however, is limited by § 288.210. This statute states, in pertinent part as follows:

> Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the decision was procured by fraud; (3) That the facts found by the commission do not support the award; or (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Id.*

In determining whether the decision is authorized by law, we are not bound by

---

1. All references to statutes are to RSMo 2000 unless otherwise specified.

2. All references to constitutional provisions are to the Missouri Constitution of 1945 unless otherwise specified.

the Commission's conclusions of law or its application of law to facts. *George's Processing, Inc. v. Ottendorf,* 57 S.W.3d 923, 925 (Mo.App.2001). We review questions of law independently without any deference to the Commission's findings. *Lost in the Fifties, LLC v. Meece,* 71 S.W.3d 273, 277 (Mo.App.2002); *Smith v. U.S. Postal Service,* 69 S.W.3d 926, 928 (Mo. App.2002). The Commission's factual findings, on the other hand, are accorded a much more deferential standard of review. Determining the credibility of witnesses is one of the Commission's functions. *Burns v. Labor & Industrial Relations Comm'n,* 845 S.W.2d 553, 555 (Mo. banc 1993); *England v. Regan Marketing, Inc.,* 939 S.W.2d 62, 66 (Mo.App.1997). Therefore, we review the evidence in a light most favorable to the findings and decision of the Commission and disregard all opposing and unfavorable evidence. *Burns,* 845 S.W.2d at 555; *Pulitzer,* 596 S.W.2d at 417.[3] Absent fraud, the Commission's factual findings are conclusive on appeal if they are supported by competent and substantial evidence upon the whole record and are not clearly against the overwhelming weight of the evidence. *See Burns,* 845 S.W.2d at 554–55; *Pulitzer,* 596 S.W.2d at 417; *Baby–Tenda Corp. v. Hedrick,* 50 S.W.3d 369, 377 (Mo.App.2001). Thus,

where the Commission as the trier of fact has reached one of two possible conclusions from the evidence, this Court will not reach a contrary conclusion even if such a conclusion might reasonably have been reached. *Clark v. Labor & Industrial Relations Comm'n,* 875 S.W.2d 624, 626–27 (Mo.App.1994). If the evidence before the Commission would warrant either of two opposed findings, we are bound by the administrative determination, and it is irrelevant that there is evidence to support the contrary finding. *See Pulitzer,* 596 S.W.2d at 417. Our summary of the facts has been prepared in accordance with these principles.

## II. Statement of Facts and Procedural History

Shelby's claim for unemployment benefits arose out of his employment by Hayward Baker, Inc. ("Hayward"). Hayward is a contractor that specializes in ground modification and soil stabilization. In September 2002, Hayward was awarded a contract by the Army Corps of Engineers to perform levee stabilization work in Pemiscot County near Portageville, Missouri. Tom Munday was Hayward's field superintendent for the project.

**3.** In *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003), the Supreme Court reviewed the Commission's decision in a worker's compensation case. There, the standard of review as to the Commission's factual findings was governed by Mo. Const. art. V, § 18 and § 287.495.1. The Supreme Court held that, "[t]here is nothing in the constitution or section 287.495.1 that requires a reviewing court to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton,* 121 S.W.3d at 223. In our view, § 287.495.1 and § 288.210 are virtually identical. Accordingly, the statements in *Burns* and *Pulitzer* about reviewing the evidence in a light most favorable to the Commission's decision appear to be at odds with *Hampton.*

However, neither *Burns* nor *Pulitzer* was listed among the many decisions that were overruled in the appendix to the *Hampton* decision. *Hampton,* 121 S.W.3d at 224–32. As we are constitutionally bound to follow the last controlling decision of the Missouri Supreme Court, we will follow *Burns* until otherwise directed by the Supreme Court. Mo. Const. art. V, § 2; *Baker v. Empire Dist. Elec. Co.,* 24 S.W.3d 255, 263 (Mo.App.2000). Since we have concluded that the Commission's factual findings were supported by competent and substantial evidence on the whole record and were not against the overwhelming weight of the evidence, our disposition of this case would not change even if we applied *Hampton* here.

The levee stabilization project was divided into two different phases. The first phase of the project involved some initial dirt work, followed by the injection of a mixture of lime, ash and water into the levee bank to firm it up so landslides would not occur. This first phase of the project was called the injection process. The second phase of the project involved the performance of additional dirt work, followed by seeding and fertilizing of the disturbed areas.

The contract obligated Hayward to hire four union employees for this job. Shelby started working for Hayward in September 2002. He was a member of the St. Louis Local 513 Operating Engineers and was sent out by his union hall to be an equipment operator for Hayward for the duration of the project. During the first phase of the project, Shelby initially operated a piece of equipment and did dirt work at the site. Later, he was involved in the injection process. Shelby ran the pump that controlled the water flow to the machine which injected the lime, ash and water mixture into the levee.

It took approximately three months to complete the injection process. This first phase of the project was finished on Thursday, November 21, 2002. On Friday, November 22nd, Hayward employees rolled up the hoses and dismantled the equipment used to perform the injection process. At this point, the second phase of the project—consisting of additional dirt work, seeding and fertilizing—remained to be done.

That same day (November 22nd), Superintendent Munday had a meeting with Shelby and another operator, Hayward employee Floyd McKinsey. Since McKinsey lived in Kansas and wanted to go home for the Thanksgiving holiday, Munday told Shelby and McKinsey that no work would be performed the next week. However, they were told to come back to work the following week. Shelby knew that there was still dirt work that needed to be done on the project. Munday instructed McKinsey to return to Missouri on Sunday, December 1, 2002, and call Shelby. The purpose of the call was to remind Shelby that he needed to come to the job site on Monday, December 2nd, and help McKinsey with the dirt work by running one of the pieces of equipment. Shelby was supposed to go to work as soon as he arrived because he had a key to the machine and knew what to do.

As instructed, McKinsey called Shelby on Sunday night and told him that he needed to come to work on Monday morning. McKinsey said that he would not be at the job site until 10:00 or 11:00 a.m. Shelby asked if he could move cattle on Monday and come to work on Tuesday, December 3rd. McKinsey agreed to that request.

McKinsey then called Munday and told him about the change in plans. Munday instructed McKinsey to go ahead and get what he could done on Monday, even though McKinsey could not operate both machines at one time.

On Tuesday, December 3rd, Shelby arrived at the job site at 7:00 a.m. No other Hayward employees were there when he showed up. There were two pieces of equipment at the site, but they appeared to Shelby to have been cleaned up and prepared for loading. He drove around the job site, and it appeared to have been dressed like it was ready for seeding. Although Shelby observed four or five remaining mounds of dirt, he concluded that the job was finished. He assumed that the plan was to seed these mounds down and leave them until spring before knocking them down and spreading the dirt. He stayed at the job site for "a good while," but no other employees showed up. After

an hour, or perhaps more, Shelby left a note on one of the machines acknowledging that he had been there and went home. He did not call anyone before leaving the job site. His explanation for not doing so was that he had no telephone numbers for Hayward, Munday or anyone else that he could have called. Shelby admitted that he could have gotten on one of the pieces of equipment and started running it, but he thought the job was finished.

Shelby's assumption that the job was finished was incorrect. McKinsey did come to work that day as planned. Before coming to the job site, however, he had stopped to pick up some supplies for the equipment. When McKinsey arrived, there was a note on one of the machines from Shelby that said, "Looks like you've got it under control." Shelby was not there. McKinsey continued doing dirt work so that Mr. Mirly, another Hayward employee who was working that day, could get the seeding and fertilizing done. An inspector for the Corps of Engineers also visited the job site that day.

Since Shelby was a local operator, Munday had intended to continue to use Shelby to keep monitoring the site and performing additional dirt work, weather permitting, during the winter months. However, Munday interpreted Shelby's note to mean that he had abandoned the project and quit his job. Shelby was paid for two hours of "show up" time for coming to the job site and leaving a note on the machine.

When Shelby filed his claim for unemployment benefits, Hayward protested on the ground that Shelby did not show up for work as scheduled and had quit his position. The claim was initially denied by a deputy on the ground Shelby was disqualified from unemployment benefits because he left work voluntarily without good cause attributable to his work or his employer.

This decision was based on the provisions of § 288.050.1(1), which states, in pertinent part, as follows:

> Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds: (1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer . . . .

*Id.* Shelby appealed that denial, and his claim was heard by the Appeals Tribunal. After conducting a telephone hearing at which Shelby, Munday and another Hayward representative testified, the appeals referee reached the same conclusion as the deputy:

> When the claimant appeared for work on December 3, 2002, although no one was there, he was aware that the work would continue. The claimant should have waited until the supervisor appeared in order to assess whether the work was continuing. As such, the claimant voluntarily separated from work with the employer when he left the note and returned home. There was work on-going and the claimant has not shown that there was good cause attributable to the work that he was performing and to the employer's actions which would cause him to withhold his services further from the employer. As such, the claimant voluntarily separated from work with the employer in this appeal on December 3, 2002, without good cause.

On application for review, the decision of the Appeals Tribunal was unanimously affirmed and adopted by the Commission as its decision in this matter. Shelby has appealed from the Commission's decision,

and he presents three points of error for determination.

### III. Discussion and Decision

■ In Shelby's first and second points relied on, he contends that there is no competent and substantial evidence to support the Commission's finding that Shelby voluntarily separated from his employment with Hayward on December 3, 2002. In Point I, he argues that he was actually laid off on November 22, 2002, and never returned to work, so he became involuntarily unemployed. In Point II, he argues in the alternative that there was no work for him to do on December 3rd because the job he performed had been completed, and there was no one at the job site to direct him to perform different work. Since Shelby's arguments attack a single finding by the Commission, albeit by two different routes, we discuss these points together.

■ The Commission's finding on the issue of whether an employee voluntarily left his employment or was discharged is a factual determination. *Quik 'N Tasty Foods, Inc. v. Division of Employment Security*, 17 S.W.3d 620, 624 (Mo.App. 2000); *Sokol v. Labor and Industrial Relations Comm'n*, 946 S.W.2d 20, 24 (Mo. App.1997). Therefore, we will affirm the Commission's factual determination that Shelby voluntarily left his employment with Hayward on December 3, 2002, if this finding is supported by competent and substantial evidence on the record as a whole. *Sokol*, 946 S.W.2d at 24.

After reviewing the whole record, we conclude that both of Shelby's arguments lack merit. As of November 22, 2002, the first phase of the levee stabilization project had been completed. The injection process was finished, and the equipment needed to do this work had been dismantled. All that remained to be done on the project was the performance of additional dirt work, seeding and fertilizing. When Superintendent Munday met with Shelby and McKinsey on November 22nd at the job site and told them to return to work the week following the Thanksgiving holiday, Shelby knew that he was not being called back to work to operate the pump on the injection machinery. That task was completed. Shelby also knew that dirt work still needed to be done, and this was a type of work that he had already performed for Hayward earlier in the project.

McKinsey had been instructed by Munday to call Shelby on Sunday, December 1st. The purpose of the call was to tell Shelby to come to work the next day and help McKinsey with the dirt work by running one of the machines. Shelby admitted receiving this telephone call from McKinsey. Shelby received permission from McKinsey to come to work on Tuesday, December 3rd, so Shelby could move cattle on Monday. On December 3rd, Shelby went to the job site with the intention of going to work. He arrived there at approximately 7:00 a.m. Munday testified that Shelby was supposed to go to work as soon as he arrived because he had a key to the machine and knew what to do. Shelby admitted that he could have gotten on one of the pieces of equipment and started running it. His only reason for not doing so was that he erroneously assumed the job was finished. He was paid two hours wages as "show up" time for coming to the job site on December 3rd and leaving a note on one of the machines. Since other Hayward employees worked that day as directed and there was ongoing work of a type that Shelby had previously performed, Munday interpreted Shelby's absence from the job site and his note to mean that he had quit. This was a reasonable interpretation of Shelby's actions.

The foregoing evidence refutes Shelby's argument that his last day of work for

Hayward was November 22nd and that there was no work for him to do when he arrived at the job site on December 3rd. The Commission's factual finding that Shelby voluntarily left his employment with Hayward on December 3, 2002, is supported by competent and substantial evidence on the whole record and is not against the overwhelming weight of the evidence. Accordingly, we defer to that factual finding. *See Baker v. Midway Enterprises, Inc.,* 78 S.W.3d 188, 192 (Mo. App.2002). Shelby's first and second points are denied.

In Shelby's third point relied on, he argues that the Commission misapplied the law in determining that he voluntarily separated from his employment by Hayward without *good cause attributable to the work or his employer.* As a claimant seeking unemployment compensation, Shelby bears the burden of proving his eligibility for benefits. *See O'Dell v. Division of Employment Security,* 376 S.W.2d 137, 142 (Mo.1964); *Tri–State Motor Transit Co. v. Industrial Comm'n Division of Employment Sec.,* 509 S.W.2d 217, 220 (Mo.App.1974). The purpose of the Missouri Employment Security Law is to provide benefits to persons "unemployed through no fault of their own." Section 288.020.1; *Aaron's Automotive Products, Inc. v. Division of Employment Security,* 926 S.W.2d 229, 231 (Mo.App.1996). For that reason, a claimant is disqualified from receiving benefits if he or she "has left work voluntarily without good cause attributable to such work or to the claimant's employer . . . ." Section 288.050.1(1); *Wimberly v. Labor and Industrial Relations Comm'n,* 688 S.W.2d 344, 346 (Mo. banc 1985).

Since the Commission determined that Shelby voluntarily left his employment by Hayward on December 3, 2002, he is not eligible to receive benefits unless he proves that he did so for good cause attributable to the work or his employer. *See Hessler v. Labor & Industrial Relations Comm'n,* 851 S.W.2d 516, 518 (Mo. banc 1993); *Lusher v. Gerald Harris Constr., Inc.,* 993 S.W.2d 537, 545 (Mo.App.1999). Whether such good cause exists is a question of law which we review independently without any deference to the Commission's determination. *See Cooper v. Hy-Vee, Inc.,* 31 S.W.3d 497, 502 (Mo.App.2000); *Sokol v. Labor and Industrial Relations Comm'n,* 946 S.W.2d 20, 26 (Mo.App.1997).

In *Department of Natural Resources–Parks and Recreation v. Lossos,* 960 S.W.2d 537 (Mo.App.1998), this Court summarized the legal principles relating to the "good cause" requirement of § 288.050.1(1) in the following fashion:

> The phrase "good cause" has no precise meaning; it depends on the facts of each case. An employee has good cause to quit his employment if his conduct is consistent with what a reasonable person acting in good faith would do in a similar situation. The circumstances motivating an employee to quit must be caused by external pressures so compelling that a reasonably prudent person would be justified in terminating his employment. Good faith is an essential element of good cause, and to establish it the employee must prove that he made an effort to resolve the troublesome situation before terminating his job.

*Id.* at 540 (citations omitted). We conclude that Shelby failed to meet his burden of proving "good cause" because his decision to leave the job site and go home—without waiting for any other employees to arrive, or conferring with his employer and obtaining permission to do so—was not consistent with what a reasonable person, acting in good faith, would have done in a similar situation. *See Sokol,* 946 S.W.2d at

26 (good cause is judged by an objective determination of what a reasonable person would have done under the same or similar circumstances); *Clark v. Labor & Industrial Relations Comm'n,* 875 S.W.2d 624, 627 (Mo.App.1994) (good cause is conduct that conforms to what an average person, who acts with reasonableness and good faith, would do).

The only reason that Shelby voluntarily left the job site on December 3rd was because he assumed, erroneously, that all work on the project had been completed. Even if his assumption was subjectively reasonable from his point of view, he cannot avoid the disqualification contained in § 288.050.1(1) because his assumption was wrong, and that error is not attributable to either his work or his employer. *See Hessler v. Labor & Industrial Relations Comm'n,* 851 S.W.2d 516, 518–19 (Mo. banc 1993); *Quik 'N Tasty Foods, Inc. v. Division of Employment Security,* 17 S.W.3d 620, 626 (Mo.App.2000). In order to establish good faith, and therefore good cause, Shelby was obliged to discuss his concerns about whether there was any work for him to do that day with his employer before leaving the job site and going home. *See Standefer v. Missouri Division of Labor and Industrial Relations Comm'n,* 959 S.W.2d 479, 482 (Mo. App.1998); *Clark,* 875 S.W.2d at 627; *Contractors Supply Co. v. Labor and Industrial Relations Comm'n,* 614 S.W.2d 563, 565 (Mo.App.1981). Shelby's third point is denied.

The Commission's decision that Shelby was disqualified from receiving unemployment benefits pursuant to § 288.050.1(1) because he left work voluntarily without good cause attributable to his work or his employer is authorized by law, is supported by competent and substantial evidence on the whole record and is not against the overwhelming weight of the evidence. Accordingly, the Commission's decision is affirmed.

SHRUM, J., and RAHMEYER, C.J.–P.J., concur.