**Dora COYNE, Claimant–Appellant,**

v.

**CARGILL, INC., Employer, and Division of Employment Security, Respondents.**

**No. 26645.**

Missouri Court of Appeals,
Southern District,
Division II.

July 27, 2005.

Dora Coyne, Sikeston, MO, pro se.

Ninion S. Riley, Jefferson City, MO, for Respondent, Division of Employment Security.

Employer Cargill, Inc., Sikeston, MO, pro se.

No brief filed by Respondent Cargill, Inc.

JEFFREY W. BATES, Chief Judge.

Dora Coyne ("Coyne") appeals from a decision of the Labor and Industrial Relations Commission ("Commission") denying her claim for unemployment benefits pursuant to Missouri's Employment Security Law, §§ 288.010–.500.[1] The Commission decided Coyne was not entitled to such benefits because she left work voluntarily without good cause attributable to the work or to her employer. Coyne contends the Commission's decision was not supported by the evidence. We affirm.

### I. Standard of Review

■ Since sufficiency of the evidence is the only issue in this appeal, we look to art. V, § 18 of the Missouri Constitution and § 288.210 to determine the scope of our review of the Commission's order.[2] Article V, § 18 directs us to determine whether the Commission's decision is "supported by competent and substantial evidence upon the whole record." *CNW Foods, Inc. v. Davidson*, 141 S.W.3d 100, 102 (Mo.App.2004). In addition, § 288.210 states, in pertinent part, that "[u]pon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive...." In determining whether the Commission's order is supported by competent and substantial evidence, we must accord deference to the

1. All references to statutes are to RSMo (2000).

2. All references to constitutional provisions are to the Missouri Constitution of 1945.

Commission's determinations on matters of witness credibility and the resolution of conflicting evidence. *Taylor v. Div. of Employment Sec.,* 153 S.W.3d 878, 881 (Mo.App.2005); *CNW Foods, Inc.,* 141 S.W.3d at 102–03; *Shelby v. Hayward Baker, Inc.,* 128 S.W.3d 164, 166 (Mo.App. 2004).

## II. Statement of Facts and Procedural History

Coyne worked for Cargill, Inc. ("Cargill") as a customer service representative from September 2, 2003 through May 25, 2004. Coyne was hired as a full-time employee at a wage of $10 per hour. Her work hours were 8:00 a.m. to 5:00 p.m. John Anderson ("Anderson"), Cargill's sales manager, was Coyne's supervisor. Anderson told Coyne when she was hired that her job would require some seasonal overtime, but it usually did not amount to a significant number of hours. Coyne acknowledged that some overtime should not be a problem, but she did ask that she not be required to travel because she had two small children.

In Coyne's job as a customer service representative, she and the farm marketing employees dealt extensively with Cargill's farmer customers. In order to let Coyne meet personally with these customers and make her a more visible part of the team, she was asked on four or five occasions to go with the marketing employees to farm shows and dinners during the nine months she was employed by Cargill. All of these events would have required only local travel between 8:00 a.m. and 5:00 p.m. Coyne refused to work out of the office because she did not feel comfortable traveling alone with other people in their cars, particularly if they were men. Cargill accepted Coyne's decision, and her job was not in jeopardy because of her refusal to attend these functions.

In 2004, Cargill hired J.R. Prince to work as a "cash rep." This new position required Prince to travel locally and work with customers out of the office 80–90% of the time. His rate of pay was $20 per hour. Anderson did not even interview Coyne for the job because of the travel requirements. Coyne was upset that she was not hired to fill this new position because, for $20 per hour, she could have made arrangements to travel.

On May 9, 2004, Coyne had to work two hours on Mother's Day, which was on a Sunday. This was the only time Coyne ever had to work overtime on a weekend, and it was necessitated by an abnormal situation in which Cargill was performing "a computer centralization."

A few days later, Coyne had a meeting with Anderson. During that conversation, Coyne told Anderson that she couldn't travel outside the office, work weekends or work after 5:00 p.m. She asked about working part time so she could take classes to train for another type of employment, but Anderson informed her that Cargill had no part-time jobs. Coyne then asked for a $5 per hour raise, which was well above the amount paid to other Cargill customer service representatives. Anderson said he would speak with his supervisor about the issue. Coyne was willing to continue working for Cargill as a customer service representative if she got this raise.

Anderson spoke with his supervisor, Paul Sell, about Coyne's request for more money. The request was denied. When Anderson told Coyne a few days later that she would not be getting a raise, she said she was going to quit her job on May 25, 2004. She intended to "better herself" by going back to school to become trained as a stenographer or medical transcriptionist. May 25th was Coyne's last day of work at Cargill.

On June 1, 2004, Coyne filed an initial claim for unemployment benefits. On June 7, 2004, Cargill filed a timely written protest asking that the claim be denied because Coyne quit her job. *See* § 288.070.1. A deputy determined that Coyne was disqualified from receiving unemployment benefits because she left work voluntarily without good cause attributable to her work or her employer.

Coyne appealed the deputy's determination. During a hearing before an appeals referee, the evidence which we summarized above was adduced. The Appeals Tribunal found that Coyne quit her job at Cargill because: (1) she did not get a raise; and (2) on one occasion, she was asked to work two hours on a weekend. Coyne's claim was denied because the Appeals Tribunal concluded that she voluntarily left work on May 25, 2004 without good cause attributable to the work or to the employer. On application for review, the decision of the Appeals Tribunal was unanimously affirmed and adopted by the Commission as its decision in this matter. This appeal followed.

### III. Discussion and Decision

■ As a claimant seeking unemployment compensation, Coyne bore the burden of proving her eligibility for benefits. *See O'Dell v. Div. of Employment Sec.*, 376 S.W.2d 137, 142 (Mo.1964); *Tri–State Motor Transit Co. v. Indus. Comm'n Div. of Employment Sec.*, 509 S.W.2d 217, 220 (Mo.App.1974). The purpose of the Missouri Employment Security Law is to provide benefits to persons "unemployed through no fault of their own." § 288.020.1; *Aaron's Automotive Products, Inc. v. Div. of Employment Sec.*, 926 S.W.2d 229, 231

(Mo.App.1996). Therefore, a claimant is disqualified from receiving benefits if he or she "has left work voluntarily without good cause attributable to such work or to the claimant's employer...." § 288.050.1(1); *Wimberly v. Labor and Indus. Relations Comm'n*, 688 S.W.2d 344, 346 (Mo. banc 1985).

■ On appeal, Coyne argues there is no substantial evidence to support the Commission's finding that she voluntarily separated from her employment with Cargill because she was actually terminated from her employment. The Commission's finding on the issue of whether an employee voluntarily left her employment or was discharged is a factual determination. *Shelby v. Hayward Baker, Inc.*, 128 S.W.3d 164, 169 (Mo.App.2004); *Quik 'N Tasty Foods, Inc. v. Div. of Employment Sec.*, 17 S.W.3d 620, 624 (Mo.App.2000). We will affirm the Commission's factual determination that Coyne voluntarily left her employment with Cargill on May 25, 2004 if this finding is supported by competent and substantial evidence on the record as a whole. *Sokol v. Labor and Indus. Relations Comm'n*, 946 S.W.2d 20, 24 (Mo. App.1997).

On appeal, Coyne argues that she was actually terminated by Cargill for three different reasons. None of Coyne's arguments have any merit.

First, Coyne argues that she was terminated because Anderson admitted Cargill could not further Coyne's career if she did not travel. That statement is in the record, but Anderson was only referring to Cargill's inability to promote Coyne to a better position within the company if she was unable to travel.[3] Indeed, this was

---

**3.** During the hearing before the appeals referee, Anderson testified that "[t]here were two other times that—when she expressed interest in growing that I did explain to her that—that those would require trips to Minneapolis which she said that she could not—she could not do. And there—but there was [sic] no repercussions. That was fine. I mean we just—just couldn't further her career if she wasn't able to do that."

the reason Coyne was not even interviewed for the "cash rep" position. Coyne's unwillingness to travel, however, had no effect on her ability to continue working as a customer service representative. Her first argument has no merit.

Second, Coyne claims she was terminated because her request to continue working for the company part time was denied. This argument fails because Cargill did not have any part-time jobs available, and a claimant's actual or potential unavailability for full-time employment can be treated by the employer as a resignation. *See Bergmann v. Labor and Indus. Relations Comm'n,* 604 S.W.2d 811, 812 (Mo.App. 1980) (where employee's actions caused him to no longer be available for full-time employment with his current employer, he thereby brought about his own voluntary separation from work without good cause attributable to his work or to his employer).

Third, Coyne argues that she was terminated because she asked for a raise. This last argument is foreclosed by the Commission's finding that Coyne "quit because she did not receive a raise." This factual finding is supported by Anderson's testimony during the hearing before the appeals referee:

Q. Did [Coyne] quit, was she discharged, or is there another word to describe the separation?

A. She quit.

Q. Did she tell somebody that she quit?

A. Told me.

This finding is likewise supported by Coyne's own admissions during the hearing:

Q. You—if you got the raise you testified you were willing to stay. Is that accurate?

A. Yes.

Q. So does that mean that you're willing to stay and somehow work around the extended hours or week-end requirements if you're getting ... enough money?

A. Yes, with sufficient notice.

Since the Commission's factual finding that Coyne quit her job is supported by competent and substantial evidence upon the whole record and is not clearly against the overwhelming weight of the evidence, we are bound by this administrative determination. *CNW Foods, Inc. v. Davidson,* 141 S.W.3d 100, 102–03 (Mo.App.2004).

In conclusion, the Commission's decision that Coyne was disqualified from receiving unemployment benefits by § 288.050.1(1) because she left work voluntarily without good cause attributable to her work or her employer is supported by competent and substantial evidence on the whole record and is not against the overwhelming weight of the evidence. Accordingly, the Commission's decision is affirmed. *See Shelby v. Hayward Baker, Inc.,* 128 S.W.3d 164, 171 (Mo.App.2004).

SHRUM and BARNEY, JJ., concurs.