John WHEELER, Appellant,

v.

POOR BOY TREE SERVICE, INC. and Division of Employment Security, Respondent.

No. 28776.

Missouri Court of Appeals, Southern District.

May 13, 2008.

Mark Allen Jess and Kevin C. Koe, Law Offices of Mark A. Jess, LLC, Kansas City, for Appellant.

Larry R. Ruhmann, Jefferson City, for Respondent.

DANIEL E. SCOTT, Judge.

John Wheeler ("claimant") appeals his § 288.050 [1] disqualification for unemployment benefits. A deputy initially ruled in his favor. An appeals tribunal reversed, concluding that claimant left work voluntarily without good cause attributable to his work or his employer. The Labor and Industrial Relations Commission affirmed and adopted the appeals tribunal's decision.

## Standard of Review

Our review is limited. The Commission's factual findings, absent fraud, are conclusive if supported by competent and substantial evidence. § 288.210. Our jurisdiction is confined to questions of law. *Id.* We can disturb the decision only if (1) the Commission exceeded its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) no sufficient competent evidence of record warrants the award. *Id.*

## Procedural Background

Claimant and his employer's president testified at the hearing. No documents were offered; the transcript was just 30 pages. The Commission found from the evidence that:

> The claimant worked for the employer for approximately one and one-half years. He performed work of the type which required physical exertion and lifting.

> By May 10, 2007, the claimant's last workday, the employer's president had learned that a doctor had placed lifting restrictions on the claimant in January 2006. These restrictions were such that the claimant was violating the restrictions, if they were still in effect, with the performance of the work duties which he had with the employer. Thus, the claimant was notified that he was suspended from work until he provided a medical report indicating that he was presently capable of performing his duties. The claimant refused to provide any report to the employer and, therefore, has not worked for the employer since May 10, 2007. The claimant has refused to provide a medical report as requested because he contends that he is not legally required to do so.

After quoting relevant statutes—including § 288.050.1(1), which disqualifies for benefits a claimant who "left work voluntarily without good cause attributable to such work or to the claimant's employer"—the Commission continued:

> The first issue to be resolved in this appeal is whether the claimant left his work voluntarily or was discharged. Since the claimant could have preserved his employment with the employer by providing a medical report and chose not to even attempt to do that, it is conclud-

1. Statutory citations are to RSMo 2000 &amp; 2007 Supp. unless otherwise indicated.

ed that he left his work voluntarily. The remaining issue then is whether he left with good cause attributable to his work or to his employer. In considering that issue, it is necessary to consider whether the request for a medical report made by the employer was a reasonable one for the claimant to at least attempt to comply with. The Appeals Tribunal concludes that the employer's request was reasonable in order to protect the claimant's health and the health of the claimant's co-workers. That is, if the claimant was performing work which he ought not be doing, it could endanger his health and that of his co-workers. The claimant's refusal to at least attempt to comply with the employer's request indicates that he did not have good cause to leave work under these circumstances. For the foregoing reasons, it is concluded that the claimant left his work voluntarily on May 10, 2007, without good cause attributable to his work or to his employer.

### Claims on Appeal

Claimant raises two appeal points. We can summarily reject Point II, which claims the Commission's decision is contrary to Americans with Disabilities Act (ADA)[2] and Missouri Human Rights Act (MHRA)[3] provisions. These laws govern only employers of at least 15 and six persons respectively. 42 U.S.C. § 12111(4), (5)(A); RSMo § 213.010(7), § 213.055. The record does not establish the requisite number of employees to trigger either such law.

Point I denies that claimant, contrary to § 288.050.1(1), voluntarily left work without good cause attributable to such work or his employer. It contends claimant could not preserve his employment because his employer "indefinitely suspended

him until he obtained a release (that was medically impossible for him to obtain) and that conflicted with the lifting requirements imposed on every other employee."

### Voluntarily Left

■ The Commission properly treated the § 288.050.1(1) issue as two questions:

1. Did claimant leave his work voluntarily or was he discharged?
2. If he left voluntarily, did he have good cause attributable to his work or to his employer?

Although the Commission subtitled both analyses as "Conclusions of Law," the first is a factual determination. *Coyne v. Cargill, Inc.*, 167 S.W.3d 800, 803 (Mo.App. 2005); *Shelby v. Hayward Baker, Inc.*, 128 S.W.3d 164, 169 (Mo.App.2004); *Madewell v. Division of Employment Sec.*, 72 S.W.3d 159, 163 (Mo.App.2002). We will affirm the Commission's finding thereon if supported by competent and substantial evidence on the record as a whole. *Coyne*, 167 S.W.3d at 803. If such evidence supports it, the Commission's decision binds us, notwithstanding contrary evidence. *See RPCS, Inc. v. Waters*, 190 S.W.3d 580, 583–84 (Mo.App.2006).

■ The hearing transcript supports the finding that claimant would not seek any medical report because he claimed he was not legally required to do so. Claimant, acting *pro se*, repeatedly and forcefully lectured his employer's president and the appeals tribunal about ADA requirements and prohibitions. He also testified that he was not required to give his employer a medical report; he told his employer so; and he was "certain" that he was correct under the ADA.

Nonetheless, claimant claims the Commission wrongly deduced that he left work

---

**2.** 42 U.S.C. §§ 12101 *et seq.*

**3.** RSMo §§ 213.010 *et seq.*

voluntarily, and argues instead that he was indefinitely suspended. We find no evidence that claimant's employer suspended him "indefinitely," "until further notice," or in other terms tied to the employer's next act or decision. The suspension was indefinite only in the sense that, although claimant needed to respond, he apparently could do so on his own timetable.

Our unemployment statutes have been interpreted as disqualifying an employee who caused his dismissal by his wrongful inaction or his choosing not to be employed. *Davis v. School of the Ozarks, Inc.*, 188 S.W.3d 94, 101 (Mo.App.2006).

"The causation envisioned by the statutes 'is that having as its direct and immediate consequence the claimant's unemployment.'" Sometimes, the "causation depends on whether the final act needed to effect separation was committed by the employee or by the employer."

*Id.* (citations omitted). Notwithstanding any debate as to the kind of medical report claimant's employer requested or may have accepted, the Commission concluded that claimant was unwilling to seek *any* report. The record supports the Commission's implicit assessment that claimant's refusal to seek a medical report, rather than his employer's request therefor, was the direct and immediate cause of claimant's unemployment. *See Davis*, 188 S.W.3d at 101–02; *Madewell*, 72 S.W.3d at 165–67.

### Statutory Discharge?

■ Claimant claims the last sentence of § 288.040.2[4] renders his suspension a discharge. We are not convinced that provision applies. Section 288.040 addresses eligibility for benefits, while § 288.050 deals with disqualification for benefits. Eligibility under § 288.040 does not preclude disqualification under § 288.050.[5] The Commission never questioned claimant's § 288.040 eligibility. It disqualified him pursuant to § 288.050.1(1) for leaving work "voluntarily without good cause attributable to such work or to the claimant's employer." Since claimant cites no authority to apply our eligibility statute to a disqualification decision, we decline to do so.

### Good Cause

■ Our deference to the Commission's findings does not extend to the "good cause" issue. Whether claimant had good cause to quit, attributable to his employer or work, is a question of law that we review *de novo*. *See Shelby*, 128 S.W.3d at 170; *Madewell*, 72 S.W.3d at 163. "Good cause" has no precise meaning; it depends on the facts of each case. *Shelby*, 128 S.W.3d at 170.

"An employee has good cause to quit his employment if his conduct is consistent with what a reasonable person acting in good faith would do in a similar situation. The circumstances motivating an employee to quit must be caused by external pressures so compelling that a reasonably prudent person would be justified in terminating his employment."

*Id.*, quoting *Department of Natural Resources Parks and Recreation v. Lossos*, 960 S.W.2d 537, 540 (Mo.App.1998). Claimant has the burden to prove good

---

**4.** "A claimant shall be ineligible for waiting week credit or benefits for any week for which the deputy finds he or she is or has been suspended by his or her most recent employer for misconduct connected with his or her work. Suspensions of four weeks or more shall be treated as discharges."

**5.** 37 Missouri Practice, Employment Law and Practice § 14:10 (2007–08 Ed.). "A very real and distinct difference exists" between ineligibility and disqualification. Missouri Employer–Employee Law § 5.44 (MoBar 2d Ed.2000).

cause. *Shelby,* 128 S.W.3d at 170; *Sokol v. Labor & Indus. Relations Comm'n,* 946 S.W.2d 20, 23 (Mo.App.1997).

Claimant claims his refusal to seek a medical report was reasonable, since his employer's request "was not reasonable, and was in fact, illegal in light of the provisions of the ADA and MHRA, and further the request was unfair and arbitrary given [the employer]'s existing policy." However, we have noted claimant's failure to show ADA or MHRA application.[6] The record likewise does not adequately establish the employer's "existing policy," if any.[7]

Given his physician-imposed lifting restrictions; his failure to disclose them despite his employer's inquiry; and his failure to show that a medical inquiry was barred by applicable law; claimant has not persuaded us that his employer's request was unreasonable, nor that claimant's refusal was reasonable. Thus, claimant has not carried his burden as to good cause. *Shelby,* 128 S.W.3d at 170; *Sokol,* 946 S.W.2d at 23. Point I fails. The judgment is affirmed.

PARRISH, P.J. and BATES, J., concurs.

---

6. Nor do we think such laws, when applicable, can be construed so dogmatically. "The ADA does not prevent employers from obtaining medical and related information necessary to evaluate the ability of applicants and employees to perform essential job functions." Equal Employment Opportunity Commission, A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act § 6.2 (January 1992). "Employers may conduct employee medical examinations ... to determine current 'fitness' to perform a particular job." *Id.* at § 6.1. "If a worker has an on-the-job injury which appears to affect his/her ability to do essential job functions, a medical examination or inquiry is job-related and consistent with business necessity." *Id.* at § 9.4. Although the ADA (when applicable) does limit employer rights to seek and use employee medical reports, it is not the absolute bar posited by claimant, particularly at the appeals tribunal hearing.

7. Point I somewhat similarly claims the employer required a work release "that conflicted with the lifting requirements imposed on every other employee." We find no such competent or substantial evidence adduced at the hearing.