**Nedzib KORKUTOVIC, Respondent,**

v.

**GAMEL COMPANY, Appellant,**

and

**Division of Employment Security, Respondent.**

No. ED 91420.

Missouri Court of Appeals, Eastern District, Division One.

March 10, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 2009.

Frank J. Niesen, III, Saint Louis, MO, for Respondent Nedzib Korkutovic.

Karie E. Casey, Saint Louis, MO, for Appellant.

Larry R. Ruhmann, Jefferson City, MO, for Respondent Division of Employment Security.

### *OPINION*

GLENN A. NORTON, Judge.

Gamel Company ("Employer") appeals the decision of the Labor and Industrial Relations Commission awarding Nedzib Korkutovic ("Claimant") unemployment benefits. We affirm.

### I. BACKGROUND

Claimant began working for Employer in 2003 as a janitor. Claimant's job duties

included moving tables and desks and climbing ladders to dust and clean.

In February 2007, Claimant had surgery to correct non-work-related problems he was having with arteries in his legs. Claimant returned to work in May 2007 without work restrictions. He continued working, with occasional complaints, through October 2007. At some point during the month of October 2007, Claimant talked to his supervisor, Aladin Kovacevic ("Supervisor"), about the physical problems he was experiencing because of his job duties. Supervisor asked Claimant to either write down his complaints or provide Employer with medical documentation. On October 29, 2007, Claimant provided Supervisor with doctor's notes stating that Claimant had the following work restrictions: (1) he could not lift more than forty pounds; (2) he could not climb ladders; and (3) he should sit down for five minutes every hour.

The next day, on October 30, 2007, Claimant reported to work at his regular shift time. Before he could begin his duties, Supervisor informed Claimant that he no longer had a job. Employer would not allow Claimant to work unless he provided a statement from his doctor removing Claimant's work restrictions. Employer was worried about the safety of Claimant and those around him.

One week later, on November 6, 2007, Employer's president, James Gamel, and Supervisor met with Claimant to explore whether Employer could reasonably accommodate Claimant's work restrictions. The parties could not find a way for Employer to do so. Claimant suggested that he keep working and ignore his doctor's restrictions. Employer would not accept this proposal, and insisted that Claimant could not work without having his restrictions removed. Claimant did not return to work after November 6, 2007.

Subsequently, Claimant filed a claim for unemployment benefits. Employer filed a protest to the claim. A deputy with the Missouri Division of Employment Security determined that Claimant was disqualified from receiving unemployment benefits because he left work voluntarily without good cause attributable to his work or Employer. Claimant appealed the deputy's decision to the Division's appeals tribunal. The appeals tribunal held a hearing. At the hearing, Claimant testified that he believed he was fired. Gamel testified that it was his understanding that Claimant quit work for personal reasons due to his health, and Supervisor testified that he believed Claimant was no longer working for Employer because of his medical restrictions. Subsequently, the appeals tribunal affirmed the result reached by the deputy. The appeals tribunal found that: (1) Claimant left work voluntarily because he could not perform the essential functions of his job; and (2) Claimant left work for "personal reasons, his health .... which is not good cause attributable to the work or to the employer."

Claimant then filed an application for review to the Commission. The Commission reversed the decision of the appeals tribunal and awarded Claimant unemployment benefits. The Commission concluded that: (1) Claimant did not leave his job voluntarily but was discharged by Employer; and (2) Employer failed to satisfy its burden of proving that Claimant was discharged for misconduct connected with work. Employer appeals.

## II. DISCUSSION

### A. Standard of Review

On appeal from a decision in an unemployment benefits proceeding, this Court may modify, reverse, remand for rehearing, or set aside the award upon finding

that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Section 288.210 RSMo 2000.[1]

Our review "is limited to deciding whether the Commission's decision is supported by competent substantial evidence and authorized by law." *Ewing v. SSM Health Care*, 265 S.W.3d 882, 886 (Mo.App. E.D.2008) (internal quotation omitted). Viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to the Commission's decision, we will affirm the Commission's decision if, in light of the whole record, we find that the Commission could have reasonably made its findings and reached its result. *Id.* Although this Court defers to the Commission's factual findings, we are not bound by the Commission's conclusions of law or its application of the law to the facts. *Difatta–Wheaton v. Dolphin Capital Corporation*, 271 S.W.3d 594, 595 (Mo. banc 2008); *Ewing*, 265 S.W.3d at 886.

## B. Claimant is not Disqualified from Receiving Unemployment Benefits

In its sole point on appeal, Employer argues that the Commission erred in concluding that: (1) Claimant did not leave work voluntarily but was discharged; and (2) Employer failed to satisfy its burden of proving that Claimant was discharged for misconduct connected with work. Employer maintains that the facts found by the Commission do not support the award of unemployment benefits, that there was not sufficient competent evidence in the record to warrant the making of the award, and that the Commission misapplied the law. We disagree.

The issue in this case is whether Claimant, who became unemployed because documented medical restrictions did not allow him to perform his job, is disqualified from receiving unemployment benefits. Under section 288.050 RSMo Supp.2007,[2] a claimant is disqualified from receiving unemployment benefits if a deputy finds: (1) "[t]hat the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer"; or (2) "that a claimant has been discharged for misconduct connected with the claimant's work." Section 288.050.1(1); Section 288.050.2.

### 1. Claimant Left Work Involuntarily

Employer's position that the Commission erred in finding that Claimant did not leave work voluntarily but was discharged is untenable in light of the recent Missouri Supreme Court case *Difatta–Wheaton*.[3]

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. All references to section 288.050 are to RSMo Supp.2007.

3. In support of its claim that Claimant voluntarily left work and was not discharged, Employer cites *Wheeler v. Poor Boy Tree Service, Inc.*, 252 S.W.3d 253 (Mo.App. S.D.2008). In *Wheeler*, the employer suspended claimant from work until he provided a medical report indicating that he was presently capable of performing his duties after the employer became aware that the claimant failed to disclose medical restrictions. *Id.* at 255. The claimant refused to provide a medical report to his employer, and subsequently applied for unemployment benefits. *Id.* The Commission found that the claimant was disqualified from receiving unemployment benefits because he left work voluntarily without good cause attributable to his work or his employer. *Id.* The Southern District affirmed the Commission's finding that Claimant left work voluntarily because, *inter alia,* "the Commission concluded that claimant was unwilling to seek *any* report" and this refusal "was the direct and immediate cause of claimant's unemployment." *Id.* at 256–57 (emphasis in

### a. *Difatta–Wheaton*

In *Difatta–Wheaton*, the employer granted the claimant leave for medical problems related to ovarian cancer, and claimant was due to return to work on May 29, 2006. 271 S.W.3d at 595. The claimant did not return to work as expected because she suffered a medical emergency related to her ovarian cancer. *Id.* The claimant left a message with her supervisor on May 29 before the beginning of her shift that advised him she was unable to come to work due to cancer complications. *Id.* The message also stated that the claimant would fax over a statement from her doctor. *Id.* The claimant's doctor faxed a statement to the employer on May 29. *Id.* Additionally, a friend of the claimant delivered a copy of the doctor's statement to claimant's employer. *Id.* On June 5, 2006, the employer sent claimant a letter stating that claimant had voluntarily resigned because of unexcused absences between May 29 and June 5. *Id.*

The issue before the Missouri Supreme Court in *Difatta–Wheaton* was whether the claimant's absence from work established that she left work voluntarily under section 288.050.1(1). *Id.* at 595–96. Section 288.050.1(1) provides that a claimant is disqualified from receiving benefits if a deputy finds "[t]hat the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." The statute does not define the term "voluntarily." *Difatta–Wheaton,* 271 S.W.3d at 596.

The Supreme Court examined prior Missouri cases that applied section 288.050.1(1) to a situation where a claimant was unable to work due to a personal illness in light of the general public policy of Missouri's employment security law, chapter 288. *Id.* at 596–98. The general purpose of chapter 288, as codified in section 288.020, is to provide unemployment compensation "for the benefit of persons unemployed through *no fault* of their own." *Id.* at 598 (quoting section 288.020.1) (emphasis by the Supreme Court). Moreover, chapter 288 "shall be liberally construed to accomplish its purpose." *Id.* (quoting section 288.020.2). Based upon this public policy, the Supreme Court held that "[t]o the extent [previous cases] suggest that non-work-related illness is a *per se* disqualification, they should no longer be followed." *Id.* at 598. The Court also held that "those who leave work involuntarily are never disqualified from eligibility under [section 288.050.1(1) ] . . . ." *Id.*

Applying the public policy of chapter 288 and the plain language of the term "voluntarily" (which means, "proceeding from the will: produced in or by an act of choice") to the particular facts of that case, the Supreme Court determined that claimant's absence from work was not voluntary. *Id.* at 598–99 (quoting *Webster's Third New International Dictionary* 2564 (Unabridged, 1993)). In making its determination, the Court noted that: (1) the claimant notified her employer before she was scheduled to return to work that she would not be returning due to her medical emergency; (2) the claimant was in compliance with the company's written policy regard-

original). We find that *Wheeler* does not apply to the instant case for two reasons. First, *Wheeler* is factually distinguishable from the instant case because: (1) the record reveals that Claimant timely provided medical documentation when requested by his Supervisor; (2) the Commission in this case did not find that Claimant was unwilling to seek any med-

ical documentation; and (3) Claimant became unemployed because documented medical restrictions did not allow him to perform his job. Secondly, unlike *Difatta–Wheaton,* 271 S.W.3d 594, *Wheeler* is not binding precedent on this Court. This opinion takes no position on whether *Wheeler* is still good law in light of *Difatta–Wheaton.*

ing absences; and (3) the claimant took the steps necessary to preserve her employment. *Id.*

**b. Applying *Difatta–Wheaton* and the Law Contained therein to the Facts of this Case**

█ In applying *Difatta–Wheaton* and the law contained therein to the facts of this case, we give deference to the Commission's factual findings, which are as follows. At some point during the month of October 2007, Claimant talked to Supervisor about the physical problems he was experiencing because of his job duties. Supervisor asked Claimant to either write down his complaints or provide Employer with medical documentation. On October 29, 2007, Claimant provided Supervisor with doctor's notes stating that Claimant had the following work restrictions: (1) he could not lift more than forty pounds; (2) he could not climb ladders; and (3) he should sit down for five minutes every hour. The next day, Supervisor told Claimant that he no longer had a job. Employer would not allow Claimant to work unless he provided a statement from his doctor removing Claimant's work restrictions. Thereafter, the parties could not find a way for Employer to reasonably accommodate Claimant's work restrictions. Claimant suggested that he keep working and ignore his doctor's restrictions. Employer would not accept this proposal, and insisted that Claimant could not work without having his restrictions removed.

The Commission's factual findings demonstrate that Claimant became unemployed because documented medical restrictions did not allow him to perform his job. Unemployment compensation is designed for the benefit of persons who, like Claimant, are "unemployed through no fault of their own." Section 288.020.1. Claimant did not leave work "voluntarily" within the plain meaning of the word, i.e.

"proceeding from the will: produced in or by an act of choice." *Webster's Third New International Dictionary* at 2564. Claimant notified Employer of his medical problems and, upon Employer's request, timely provided medical documentation evidencing his work restrictions. After being informed that he no longer had a job, Claimant took steps to work again by meeting with Employer to discuss the possibility of reasonable accommodations. Claimant did not choose to be unemployed; rather, he wanted to be employed so badly that he was even willing to ignore his doctor's restrictions. Like the claimant in *Difatta–Wheaton*, it cannot be said that Claimant made a choice or was otherwise responsible for his medical problems and their consequences. *See* 271 S.W.3d at 599. Because Claimant left work involuntarily, he is not disqualified from receiving unemployment benefits under section 288.050.1(1). *See id.* at 598 (holding that "those who leave work involuntarily are *never* disqualified from eligibility under [section 288.050.1(1)] ....") (emphasis added). The Commission did not err in concluding that Claimant did not voluntarily leave work but was discharged.

**2. Claimant's Physical Inability to do his Job does not Constitute Misconduct**

█ We now turn to whether the Commission's conclusion that Employer failed to satisfy its burden of proving that Claimant was discharged for misconduct connected with work is supported by competent substantial evidence and is authorized by law. Whether a claimant's actions constitute misconduct connected with work is a question of law that we review de novo. *Berwin v. Lindenwood Female College*, 205 S.W.3d 291, 294 (Mo.App. E.D. 2006).

Section 288.050.2 provides that "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits." The definition of "misconduct" is set out in section 288.030.1(23) RSMo Supp.2007:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer....

Generally, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits. *Berwin,* 205 S.W.3d at 294–95. However, when the employer claims that the employee was discharged for misconduct, the burden shifts to the employer to prove its claim of misconduct connected with work. *Id.* at 295. The employer has the burden of proving by a preponderance of the evidence that the claimant willfully violated the employer's rules or standards. *Id.*

Employer has not met its burden in the instant case. Claimant became unemployed because documented medical restrictions did not allow him to perform his job. There is a vast distinction between whether an employer would be justified in discharging an employee and whether he may prevent the employee from receiving unemployment benefits. *Berwin,* 205 S.W.3d at 295. Claimant's physical inability to do his job does not disqualify him from receiving unemployment benefits on the basis of misconduct under section 288.050.2. *See id.* The Commission did not err in concluding that Employer failed to satisfy its burden of proving that Claimant was discharged for misconduct connected with work.

### 3. Conclusion

The Commission's decision that Claimant is not disqualified from receiving unemployment benefits is supported by competent substantial evidence and is authorized by law. Point denied.

### III. CONCLUSION

We affirm the Commission's decision awarding Claimant unemployment benefits.

KURT S. ODENWALD, P.J., and PATRICIA L. COHEN, J., concur.